IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROBERT MERCER, JR. )<br>2508 Derbyshire Road, #3 )<br>Cleveland Heights, Ohio 44106 )<br> )<br> )<br>Plaintiff, )<br> )<br>vs. )<br> )<br> )<br>HOWMET AEROSPACE, INC. )<br>C/O CT Corporation System )<br>Statutory Agent )<br>4400 Easton Commons Way, Suite 125 )<br>Columbus, Ohio 43219 )<br> )<br>and )<br> )<br> )<br>INTERNATIONAL UAW )<br>C/O Abigail V. Carter-General Counsel )<br>Stuart Shoup )<br>Associate General Counsel )<br>8000 E. Jefferson Avenue )<br>Detroit, Michigan 48214 )<br> )<br>and )<br> )<br>UAW LOCAL 1050 )<br>C/O James V. Burney )<br>Jeffrey A. Judson )<br>2507 Harvard Avenue )<br>Cleveland, Ohio 44105 )<br> )<br>Defendants. ) | CASE No. 1:23-cv-00728<br><br>JUDGE SOLOMON OLIVER, JR.<br><br>MAGISTRATE JUDGE<br><br>FIRST AMENDED<br>COMPLAINT FOR EMPLOYMENT<br>DISCRIMINATION<br><br><br>(Jury Demand Endorsed Hereon) |

**I. NATURE OF ACTION**

This is an action brought under Title VII of the Civil Rights Acts of 1964 as amended, 42

U.S.C. § 2000 et seq., 42 U.S.C. § 2000e-2(c), and 2000e-5(k), the Civil Rights Act of 1991, as

amended, ("Title VII") and  R.C. § 4112.01 et seq. to correct unlawful pervasive and systemic

unlawful employment practices based upon race and retaliation resulting in more severe discipline for **Black** and **Hispanic** employees, including suspensions and terminations of employment causing **Plaintiff**, **Robert Mercer, Jr.** ("Plaintiff") to sustain damages for back-pay and lost benefits and  compensatory damages for anxiety and emotional distress. The aforementioned discriminatory employment practices were engaged in by **Defendant, Howmet Aerospace Inc.'s,** ("Defendant Howmet") supervisory and management employees, agents and/or representatives at the **Cleveland Facility** and its **Pittsburgh Pennsylvania**, Headquarters.

Plaintiff during his employment at **Defendant Howmet** was a bargaining unit member of **Defendant, International UAW** ("Defendant Intl. UAW") and **Defendant, UAW Local 1050** ("Defendant Local-1050").  **Defendants Intl. UAW** and **Local-1050**, separately and collectively failed to represent **Plaintiff** because the unions' employees, agents and/or representatives sanctioned, ignored and covered-up, the disparate racially discriminatory and retaliatory conduct of **Defendant Howmet** against its **Black** and **Hispanic** employees while at the same time, ignoring the blatant racially hostile conduct of **White** employees against both **Black** and **Hispanic** employees and then protecting its **White** employees from discipline by **Defendant Howmet.**

Pursuant to the **Collective Bargaining Agreement** ("C.B.A."), **Plaintiff's** grievance of the termination of his employment proceeded to **Arbitration** during which both **Defendants Intl. UAW,** and **Local-1050** failed to properly represent **Plaintiff** by permitting **Defendant Howmet** and the **Arbitrator**  to unlawfully and wrongfully focus the **Arbitration** of his grievance on **Defendant Howmet's** pretextual allegations that **Plaintiff** violated its **Code of**

**Conduct** and **Social Media Policy**, contrary to and in direct violation of **Plaintiff's** right under **Title VII** to engage in protected activity to oppose race discrimination.

Plaintiff submits that **Defendants Howmet**, **Intl. UAW** and **Local-1050's** actions entitle **Plaintiff** to damages for back-pay and lost benefits, compensatory damages for anxiety and emotional distress and all other relief which this Court determines **Plaintiff** is entitled, according to law.

**COMES NOW Plaintiff,** by and through counsel, and brings this **Complaint** for unlawful employment discrimination based upon disparate treatment because of his membership in the protected class of race, **Black** (African American) and for **Plaintiff** lawfully engaging in protected activity under **Title VII** to oppose unlawful racial and retaliatory discriminatory conduct by **Defendant Howmet.**  The discriminatory conduct by **Defendant Howmet** resulted in **Plaintiff** being subjected to pretextual discipline under **Defendant Howmet's Code of Conduct** initially causing him to be suspended from his employment as an **Industrial Truck Driver**, and then terminated, on **August 6, 2020**. **Plaintiff** submits that **Defendants Howmet**, **Intl. UAW** and **Local-1050's** conduct as alleged herein, entitle **Plaintiff** to damages for back-pay and lost benefits, compensatory damages for anxiety and emotional distress and all other relief which this Court determines **Plaintiff** is entitled, according to law.  **Defendant Howmet's** intentional, continuous and pervasive racially discriminatory warrants the imposition of punitive damages.

## II. JURISDICTION AND VENUE

1.  This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 451, 1331, 1332, 1337 and 1343(4). This civil action arises under the Constitution and laws of the United States. **Plaintiff** is alleging a violation of **his** rights under Title VII of the Civil Rights Act of 1964, as amended. Jurisdiction is also invoked pursuant to this Court's pendant jurisdiction with respect to the claims based on the common and statutory law of the State of Ohio, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court also has supplemental jurisdiction over **Plaintiff's** state law claims pursuant to 28 U.S.C. § 1367 as **his** state law claims are closely related to **his** federal claims.

## III. PARTIES-INTRODUCTION

2.  **Plaintiff** is a citizen of the United States and resident of the City of Cleveland Heights, Cuyahoga County, and the State of Ohio.

3.  **Plaintiff**, who is **Black** (African American) commenced his employment with **Defendant Howmet** in September 2013 and was transferred to the position of Industrial Truck Driver.

4. On or about March 17, 2021, **Plaintiff** reported to **Defendant Howmet** supervisory and management employees that **Michael Korney** ("Korney"), a **White** employee of **Defendant Howmet**, employed as a **Utility Operator** had created a hazardous working condition, which could likely have resulted in the deaths of four (4) **Defendant Howmet** bargaining unit employees.

5. **Defendant Howmet** then suspended **Plaintiff's** employment as a **Utility Operator**, for **thirty (30)** days, on or about **March 24, 2017**, based upon the false accusation of **Brian Goans** ("Goans") a **White** employee, who alleged that **Plaintiff** had threatened him

6. **Defendant Howmet** terminated **Plaintiff's** employment as an **Industrial Truck Driver** on **August 6, 2020**, for a pretextual violation of **Defendant Howmet's** Cleveland Plant **Code of Conduct** and **Social Media Policy**, seemingly only enforced against **Black** employees.

7. **Defendant Howmet** is a foreign for-profit corporation organized under the laws of the State of **Delaware**, engaged in the business of manufacturing and fabricating parts for military and commercial grade products, doing business in the City of Cleveland, Cuyahoga County and the State of Ohio at 1600 Harvard Avenue, Cuyahoga Heights, Ohio 44105.

8. **Plaintiff** as an employee of **Defendant Howmet** was a member of **Defendant Intl. UAW** and **Defendant UAW Local-1050** and entitled to the benefits and rights of the collective bargaining agreement between **Defendant Howmet** and **Defendants Intl. UAW** and **UAW Local-1050.**

9. At all times relevant herein, **Billy Myers**, a **White** male ("Myers"), **Tom Holbert**, a **White** male ("Holbert") and **Ross Seibert**, a **White** male ("Seibert") were **Human Resources** ("H.R.") employees who were responsible for the discipline of bargaining unit employees at **Defendant Howmet's** Cleveland Plant including Jeff Allen former Director of Operations.

10. **Seibert's** employment with **Defendant Howmet** ended in late 2019 and/or early in 2020, following revelations that during his employment at the **Cleveland Plant**, he and **Billy Myers** engaged in a pattern of levying more harsh/severe discipline to **Black** and **Hispanic** employees than to **White** employees for the same or similar conduct.

11. At all times relevant herein, **Myers, Holbert, Seibert** and all employees of **Defendant Howmet's H. R. Department** were acting within the course and scope of their employment for **Defendant Howmet** and as a result, **Defendant Howmet** is liable for their conduct and/or omissions under the doctrine of Respondeat Superior.

12.  At all times relevant herein, **Patrick Spayde**, a **White** male, ("Spayde") was assigned by **Defendant Intl. UAW** to represent **Plaintiff** in his **Arbitration** against **Defendant Howmet** for the termination of his employment.

13. At all times relevant herein, **James V. Burney**, current President and previously Vice President of Local-1050 ("Burney") and then Local-1050 President **Donald Mohn** ("D. Mohn"), and Mark Mohn, Forge Chair Local UAW 1050, all three both **White** males, were officials of **Defendant UAW Local-1050** who collectively collaborated with **Defendant Howmet's H.R.** employees in a pattern of racial discrimination against both **Black** and **Hispanic** employees by agreeing to more harsh or severe discipline being issued against them (**Black** and **Hispanic** employees) than to **White** employees who engaged in similar or worse conduct than **Black** and **Hispanic** employees.

14. At all times relevant herein, the **Defendant Intl. UAW** and **Defendant UAW Local-1050** officials identified in ¶¶ nos. twelve (12) and thirteen (13), respectively, above, were responsible for assisting **Plaintiff** in the presentation of his **Arbitration** against **Defendant Howmet** for the termination of his employment.

15. That **Defendant Intl. UAW Patrick Spayde** failed to interview and prepare **Nelson Rosa** and **Anthony Tiberio** for **Plaintiff's Arbitration** Hearing.

16. At all times relevant herein, **Spayde**, **Burney** and **D. Mohn,** were and are employees of **Defendant Intl. UAW** and **Defendant UAW Local-1050** were acting within the course and scope of their employment and as a result, **Defendant Intl. UAW** and **Defendant UAW Local-1050 are** liable for their conduct and/or omissions under the doctrine of Respondeat Superior.

## IV. PROCEDURAL REQUIREMENTS

17. **Plaintiff** filed a Charges of Discrimination ("Charge"), thus satisfying the requirements of 42 USC § 2000e-5(b) and (e) with the Equal Employment Opportunity Commission. Such Charges were filed within 300 days after the unlawful employment practices occurred. On or about January 9, 2023, less than ninety (90) days prior to the filing of this Complaint, the EEOC issued to **Plaintiff Notices of Suit Rights** with respect to the Charges. (See Exhibits A, B and C).

## V. STATEMENT OF FACTS

18. **Plaintiff** incorporates by reference each and every allegation, averment and statement set forth, herein above, in ¶¶ nos. one (1) through seventeen (17), as if fully restated, herein below, and states further as follows.

7

19. On March 17, 2017, **Plaintiff** truthfully reported **Korney**, a **White Utility Operator** poor job performance and the hazardous work condition he created by **Korney's** failure to instruct crew members (bargaining unit members) to secure the **Die** clamps before starting the job, which could likely have caused the deaths of four (4) crew members.

20. **Plaintiff** reported **Korney's** poor job performance and the hazardous work condition **Korney** created to **Megan Huff,** the safety manager, which hazardous condition endangered the lives of employees, Sue Carter, Rashawn Jenkins, Nancey Gray and Rich LNU.

21. **Defendant Howmet** management employees astonishingly disregarded the report of **Korney's** poor and dangerous job performance with no disciplinary action.

22. Subsequent to and in retaliation for **Plaintiff's** having reported **Korney's** poor job performance and the hazardous work condition **Korney** created, on March 23, 2017, **Goans** fabricated an accusation that **Plaintiff** threatened him ("**Goans**").

23. While no action was taken against **Korney's** for his poor job performance and the hazardous work condition he created, **Goans'** allegations against **Plaintiff** resulted in an investigation and suspension of **Plaintiff's** employment as described herein.

24. **Defendant Howmet** did not produce evidence to substantiate **Goans'** allegations about **Plaintiff** threaten him.

25. Although **Defendant Howmet** failed to fully investigate the allegations against **Plaintiff** he was suspended merely upon the allegations of a **White** employee.

26. At all times relevant herein, **Defendant Howmet's H. R. Department** employees had available for their use, a proprietary database to ensure that discipline administered to **Defendant Howmet's Black**, **Hispanic,** and **White** employees was consistent, but the **H.R. Department** employees failed to use the database.

8

27. As provided herein, **Myers, Holbert, Seibert** and other employees of **Defendant Howmet** engaged in racial discrimination against **Black** and **Hispanic** employees by issuing more harsh/severe discipline against them (**Black** and **Hispanic** employees) than they issued to **White** employees who engaged in substantially similar conduct and in some instances racially hostile conduct directed at **Black** and **Hispanic** employees.

28. As provided herein, **Myers, Holbert, Seibert** and other employees of **Defendant Howmet engaged** in racial discrimination against **Plaintiff** by issuing more harsh and or severe discipline to him (**Plaintiff**) than they issued to **White** employees who engaged in substantially similar or worse conduct.

29. **Myers, Holbert, Seibert** and other employees of **Defendant Howmet** engaged in racial discrimination against **Plaintiff** because of his race **Black** and because he had engaged in protected activity regarding racial discrimination against **Black** and **Hispanic** employees.

30. At all times relevant herein, **Defendant UAW Local-1050** officials routinely recommended to **Black** and **Hispanic** employees that they accept and agree to more harsh and or severe discipline from **Defendant Howmet** than the discipline they (the **Defendant UAW Local-1050** officials) would recommend that **White** employees accept and agree to for similar or worse conduct.

31. While **Defendant Howmet** overlooked misconduct including criminal conduct on the part of **White** employees including those in supervisory or management roles, on July 16, 2020, **Defendant Howmet** complained to the **Cuyahoga Heights Police Department** about particular social media posts which had shed light on the racial discrimination at **Defendant Howmet.**

9

32.   The **Cuyahoga Heights Police Report** determined that the social media posts and videos "...does not incite violence or a threat to any group or individual person.  I also had Dep. Chief Davis review this video and he also agrees with my conclusion." [1]

33.   Despite the finding of the **Cuyahoga Heights Police Department**, conspicuously, neither the finding or Report were presented at **Plaintiff's Arbitration** hearing.

34. **Defendant Howmet** went to extraordinary lengths to investigate and find who was responsible for revealing the racially disparate treatment of **Black** and **Hispanic** employees including but not limited to hiring a voice analyst and cyber stalking **Plaintiff.**[2]

35. To the best of **Plaintiff's** knowledge and belief, **Defendant Howmet** does not monitor the social media use of **White** employees and or does not hold **White** employees to the same standard as **Defendant Howmet** held **Plaintiff**, as described herein below, in ¶¶ nos. 37-39.

36.  At **Plaintiff's Arbitration** hearing, **Burney,** (currently **President** of **Defendant UAW Local-1050)** appeared for **Defendant Howmet,** in his (Burney's) official capacity at that time as **Vice President** of **Defendant UAW Local-1050.**

37. During **Plaintiff's Arbitration, Burney** sent a post to his (Burney's) *Facebook* Account/Page disputing and ridiculing **Plaintiff's** and other **Black** and **Hispanic** employees' complaints of race discrimination at **Defendant Howmet's** Newburgh Heights, Ohio site.

38. To the best of **Plaintiff's** knowledge and belief, **Burney's** social media account was not scrutinized by **Defendant Howmet,** nor was he suspended, terminated, nor disciplined in

---

[1] Cuyahoga Heights Police Department Investigative Report July 8, 2020, and Investigative Report Supplement July 16, 2020.

[2] Defendant Howmet presented a letter dated May 20, 2022, to the Investigator of the U.S. EEOC in which Defendant Howmet clearly demonstrates that the company was intensely monitoring Plaintiff's *personal* online presence. Within the letter Defendant Howmet refers to the company studying and researching Plaintiff online and references content that is non relevant and clearly only stated for the purpose to humiliate and embarrass Plaintiff.

any manner, instead was promoted to President, despite *his* actions in violation of the **Code of Conduct** and **Social Media Policy.**

39. That since **Burney** became **President** of **Defendant UAW Local-1050** he has removed three (3) members of color from their elected union offices, at **Defendant Howmet's** Cuyahoga Heights, Ohio site.

40. That since **Burney** became **President** of **Defendant UAW Local-1050** he has continued the pattern of disparate treatment at **Defendant Howmet** and has removed non-minority concerned with improving diversity, inclusion and fairness, from their elected union offices, at **Defendant Howmet's** Cuyahoga Heights, Ohio site.

## COUNT ONE-TERMINATION-RACE DISPARATE TREATMENT

## 42 U.S.C. § 2000e-2

41. **Plaintiff** incorporates by reference each and every allegation, averment and statement set forth, herein above, in paragraph nos. one (1) through forty-one (40), as if fully restated, herein below, and states further as follows.

42. **Plaintiff's** employment with **Defendant Howmet** was terminated based upon the false allegations against him by **Goans** and two (2) other **White** employees, Jonny Chaij and Mike Korney.

43. **Hispanic** employee **Moe Santiago** had been physically *attacked* by a **White** supervisor resulting in the arrest of the **White** supervisor and yet the **White** supervisor who did not miss one day of work, apparently was not suspended, nor terminated, and only merely moved to another department.

11

44. That since **Burney** became **President** of **Defendant UAW Local-1050** he has removed **three (3)** bargaining unit members of color from **Local Union offices** to which they were elected by the **Local Union membership**.

45. That since **Burney** became **President** of **Defendant UAW Local-1050 he** has removed non-minority bargaining unit members, concerned with diversity, inclusion and fairness, at **Defendant Howmet's** Cuyahoga Heights, Ohio site, from **Local Union offices** to which they were elected by the **Local Union membership**.

46. **Billy Myers** and **Seibert** engaged in a perfunctory and sham investigation of **Goans'** false, specious and unfounded allegations that **Plaintiff** threatened him.

47. Consistent with its established pattern and practice of subjecting **Black** and **Hispanic** employees to discriminatory discipline, **Defendant Howmet's H.R. Department** blindly accepted as true the false allegations made by **Goans** and two (2) other **White** employees against **Plaintiff.**

48. Consistent with its established pattern and practice of subjecting **Black** and **Hispanic** employees to more harsh discipline, **Defendant Howmet's H.R. Department** ignored and failed to interview employees **Nelson Rosa** and **Anthony Tiberio**, witnesses who confirmed **Plaintiff's** contention that he never threatened **Goans**.

49. **Holbert's** termination of **Plaintiff's** employment was based upon disparate treatment whereas **White** employees such as **Ron Simowski**, who has made multiple threats to Local employees including but not limited to threatening to blow off a Black employee's head, was not terminated from his employment from **Defendant Howmet.**[3]

---

[3] Further, following the Arbitration of what was supposed to be **Plaintiff's** grievance, **Simowski** threatened a Local UAW union representative (Rob Purdue) who testified on **Plaintiff's** behalf, threatening "...if I catch you outside this place you're dead."

50. As a result of the unlawful and discriminatory conduct of **Defendant Howmet's H.R. Department** employees, **Plaintiff** was terminated based on false pretextual information received from **Goans** and two (2) other **White employees** that constitutes discrimination based upon his race, **Black** , in violation of **42 U.S.C. § 2000e-2**, and **Plaintiff** has sustained lost wages for back-pay and lost benefits and compensatory damages for anxiety, humiliation, embarrassment, and emotional distress, in an amount greater than $25,000.00 to be proven at trial.

51. As a result of **Defendant Howmet's** discriminatory application of its **Code Of Conduct Plaintiff** and **Social Media Policy** was terminated because his social media postings forced **Defendant Howmet's** management to see themselves, in a light they would rather ignore than acknowledge, which was actually based on his race, **Black**, in violation of **42 U.S.C. § 2000e-2**, and **Plaintiff** has sustained lost wages for back-pay and lost benefits and compensatory damages for anxiety, humiliation, embarrassment, and emotional distress, in an amount greater than $25,000.00 to be proven at trial.

52. **Defendant Howmet's** pervasive, continuous and repeated discriminatory conduct warrants the imposition of punitive damages, in an amount to be determined by the jury.

## COUNT TWO-TERMINATION RACE DISPARATE TREATMENT
### R.C. § 4112 et seq.

53. Plaintiff incorporates by reference each and every allegation, averment and statement set forth, herein above, in paragraph nos. one (1) through fifty-three (52), as if fully restated, herein below, and states further as follows.

13

54. Based upon the unlawful and discriminatory conduct by **Holbert**, in violation of **R.C. § 4112 et seq**., as set forth, herein above, **Plaintiff** has sustained lost wages for back-pay, lost benefits and compensatory damages for anxiety, humiliation, embarrassment, and emotional distress, in an amount greater than $25,000.00 to be proven at trial.

**COUNT THREE-RETALIATION**
**42 U.S.C. § 2000 e-2**

55. **Plaintiff** incorporates by reference each and every allegation, averment and statement set forth, herein above, in ¶¶ one (1) through fifty-five (54), as if fully restated, herein below, and states further as follows.

56. The termination of **Plaintiff's** employment from **Defendant Howmet** by **Holbert**, on **August 6, 2020** was in retaliation for **Plaintiff** having engaged in protected activity opposing racial discrimination against **Black** and **Hispanic** employees since at least **2017**, 42 U.S.C.§ 2000 e-2, including the use of social media.

57. As a result of the unlawful retaliatory and discriminatory conduct by **Holbert**, in retaliation for **Plaintiff** having engaged in protected activity on behalf of **Black** and **Hispanic** employees, in violation of **42 U.S.C. § 2000 e-2**, **Plaintiff** has sustained compensatory damages for anxiety, humiliation, embarrassment, and emotional distress, in an amount greater than $25,000.00 to be proven at trial.

58**. Defendant Howmet's** pervasive, continuous and repeated discriminatory conduct warrants the imposition of punitive damages, in an amount to be determined by the jury.

## COUNT FOUR-RETALIATION
### R.C. § 4112 et seq.

59. **Plaintiff** incorporates by reference each and every allegation, averment and statement set forth, herein above, in ¶¶ nos. one (1) through fifty-nine (58), as if fully restated, herein below, and states further as follows.

60. The termination of **Plaintiff's** employment from **Defendant Howmet** by **Holbert**, on **August 6, 2020** was in retaliation for **Plaintiff** having engaged in protected activity opposing racial discrimination against **Black** and **Hispanic** employees since at least **2017**, in violation of R.C. § 4112, et seq., including the use of social media.

61. As a result of the unlawful retaliatory and discriminatory conduct of **Howmet's** Human Resource employees, described herein in violation of **R.C. § 4112 et seq**., **Plaintiff** has sustained compensatory damages for anxiety, humiliation, embarrassment, and emotional distress, in an amount greater than $25,000.00 to be proven at trial.

## COUNT FIVE-FAILURE OF REPRESENTATION
### 42 U.S.C. § 2000 e-2 and R.C. § 4112 et seq.

62. **Plaintiff** incorporates by reference each and every allegation, averment and statement set forth, herein above, in ¶¶ nos. one (1) through sixty-two (61), as if fully restated, herein below, and states further as follows.

63. At all times relevant herein, **Spayde**, **Burney** and **D.  Mohn, and M. Mohn** discriminated against **Plaintiff** because of his race **Black** collectively denied him fair and genuine representation in accordance with the terms of the Collective Bargaining Agreement.

64**. Spayde**, **Burney, M.Mohn and D. Mohn,** discriminated against **Plaintiff** because of his **Black** race ignoring **Plaintiff's** request for an Arbitrator other than **Andrew Strongin**, because **Strongin** had conducted approximately eight (8) cases between **Defendant**

15

**Howmet** and **Defendants Intl. UAW** and **UAW Local-1050** and **Plaintiff** was concerned about the bias of Arbitrator **Andrew Strongin.**

65. A **Defendant International UAW** undated letter to the **EEOC** demonstrates **Strongin's** bias, the letter clearly acknowledges that **Strongin** unreasonably and unfairly granted **Defendant Howmet** two (2) full days to present their defense; whereas **Plaintiff,** the **Grievant**, had only one (1) day to present his grievance and that his testimony was *interrupted* and ended by **Strongin.**

66. **Spayde** withheld from **Plaintiff** for an unreasonable period of time evidence that was favorable to **Plaintiff's** case and unfavorable to **Defendant Howmet.**

67. **Spayde**, **Burney** and **D. Mohn** refused to present evidence favorable to **Plaintiff's** case that cast its **White** members in an unfavorable light.

68. **Defendant Intl. UAW** ignored **Plaintiff's** repeated requests for another representative because **Spayde** was not acting in his best interests.

69. As a result of the unlawful and discriminatory conduct of **Spayde**, **Burney, D. Mohn, and M.Mohn** in failing to represent **Plaintiff** at the Arbitration, in accordance with the terms of the Collective Bargaining Agreement, **Plaintiff** was terminated from his employment with **Defendant Howmet** for discriminatory pretextual and false information, in violation of **42 U.S.C. § 2000e-2** and **R.C. § 4112 et seq, Plaintiff** has sustained lost wages for back-pay and lost benefits and compensatory damages for anxiety, humiliation, embarrassment, and emotional distress, in an amount greater than $25,000.00 to be proven at trial.

70. The conduct of **Spayde**, **Burney, M.Mohn,** and **D. Mohn**, herein warrants the imposition of punitive damages, against **Defendant Intl. UAW** and **Defendant UAW Local-1050,** in an amount to be determined by the jury.

WHEREFORE, Plaintiff, prays that this Court enter judgment on his **Complaint**, against the **Defendants** as follows:

1. On **Count One**, **Defendant Howmet** for back-pay, lost benefits and compensatory damages, in an amount greater than $25,000.00, and punitive damages in an amount to be determined at trial.

2. On **Count Two**, **Defendant Howmet** for back-pay, lost benefits and compensatory damages, in an amount greater than $25,000.00, to be determined at trial.

3. On **Count Three**, **Defendant Howmet** for back-pay, lost benefits and compensatory damages, in an amount greater than $25,000.00, and punitive damages in an amount to be determined at trial.

4. On **Count Four**, **Defendant Howmet** for back-pay, lost benefits and compensatory damages, in an amount greater than $25,000.00, to be determined at trial.

5. On **Count Five**, joint and several liability against **Defendant Intl. UAW** and **Defendant UAW Local-1050**, with back-pay and front-pay, and compensatory damages, in an amount greater than $25,000.00, and punitive damages in an amount to be determined at trial.

6. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

17

7.  Any and all other relief that this Honorable Court determines is appropriate

and just.

Respectfully submitted,

*/s/Robert Smith, III*

Robert Smith, III (25381)
**Law Offices of Robert Smith, III, LLC**
2000 Auburn Drive
One Chagrin Highlands, Suite 200
Beachwood, Ohio 44122
T: (216) 378.2950/F: (330)963.0192
Cell: (216)403.4686
E-mail: Robert.Smith@RS3Law.com

*/s/Rachael J. Martin*

Rachael J. Martin (76085)
**R.J.M. Law LLC**
333 Babbitt Road, Suite 233
Cleveland, Ohio 44123
T: (888) 580-8901/F: (888) 980.1066

Attorneys for Plaintiff
Robert Mercer, Jr.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury, pursuant to Fed. R. Civ. P. 38 (b).


*/s/Robert Smith, III*

Robert Smith, III (25381)

Attorney for Plaintiff
Robert Mercer, Jr.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **July 7, 2023**, the foregoing **First Amended Complaint For Employment Discrimination** was served upon counsel below **via electronic mail** and on the unrepresented party **via FedEx Express Mail.**

Brian J. Kelly, Esq.
Megan E. Bennett, Esq.
**Frantz Ward LLP**
200 Public Square, Suite 3000
Cleveland, Ohio 44114-1230
T: 216.515.1660
F: 215.515.1650
Email: bkelly@frantzward.com
Email: mbennett@frantzward.com

Counsel for Defendant Howmet
Aerospace, Inc.

Stuart Shoup, Esq.
Associate General Counsel
**International UAW**
8000 East Jefferson Avenue
Detroit, Michigan 48214
T: 313.926.5216
Email: sshoup@uaw.net

Counsel for Defendant
International UAW

**UAW LOCAL 1050-Via FedEx Express**
C/O James V. Burney
and Jeffrey A. Judson
2507 Harvard Avenue
Cleveland, Ohio 44105

/s/ Robert Smith, III

Robert Smith, III (25381)

Attorney for Plaintiff
Robert Mercer, Jr.