UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT MERCER, JR., | ) | Case No.: 1:23 CV 728 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| HOWMET AEROSPACE, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants | ) | ORDER |

Currently pending before the court in the above-captioned case is Defendants International

UAW and UAW-Local 1050's (collectively, the "Union") Motion to Dismiss ("Motion") (ECF

No. 13). For the reasons that follow, the court grants in part and denies in part the Motion.

## I. BACKGROUND

Plaintiff Robert Mercer, Jr., began working as a truck driver for Defendant Howmet

Aerospace, Inc. ("Howmet") in September 2013. (Compl. ¶ 3, ECF No. 4.) Mercer, who is Black,

alleges that Howmet routinely discriminated against Black and Hispanic employees by

disciplining them more severely than white employees who had "engaged in substantially similar

conduct [as the Black and Hispanic employees] and in some instances racially hostile conduct

directed at Black and Hispanic employees." (*Id.* at ¶ 27.) He likewise faults the Union for urging

Black and Hispanic employees to acquiesce to (in his view) excessively severe discipline from

Howmet. (*Id.* at ¶ 30.)

Mercer's tenure with Howmet came to a head in July 2020. During that month, Mercer

took to social media to "shed light on the racial discrimination" at Howmet. (*Id.* at ¶ 31.)

Howmet, in turn, reported Mercer's social-media posts to law enforcement, which determined them to be protected speech. (*Id.* at ¶ 31–32.) Still, according to Howmet, Mercer's posts violated its code of conduct and social-media policy, so it terminated Mercer on August 6, 2020. (*Id.* at ¶ 5.) Mercer contends that these purported reasons for his termination were "pretextual" and that Howmet selectively enforced its social-media policy against Black employees. (*Id.*)

The Union filed a grievance on Mercer's behalf, and Mercer and Howmet proceeded to arbitration. (*Id.* at ¶ 12.) Yet Mercer was displeased with the Union's efforts. (*Id.* at ¶ 63.) He claims that the Union ignored his request for an arbitrator other than Andrew Strongin, whom Mercer perceived as biased in favor of Howmet; that Howmet received two days to present its case compared to his one; that Union representatives withheld and refused to present evidence favorable to his case; and that the Union ignored his "repeated requests for another representative." (*Id.* at ¶¶ 62–68.)

On March 25, 2022, Arbitrator Strongin issued an award denying Mercer's grievance and sustaining his termination. (ECF No. 13 at PageID #391–417.) On April 9, 2023, Mercer initiated this lawsuit against Howmet and the Union. (ECF No. 1.) Relevant here, Mercer brought one claim against the Union: "failure of representation," purportedly under Title VII and its Ohio analogue. (Compl. ¶¶ 62–69.) In response, the Union moved to dismiss this claim for failure to state a claim. (ECF No. 13.) Mercer filed an Opposition Brief (ECF No. 18), and the Union filed a Reply (ECF No. 19). The matter is now ripe for adjudication.

## II. LEGAL STANDARD

In determining whether a plaintiff has stated a claim upon which relief can be granted, the court construes the complaint in the light most favorable to the plaintiff, accepts all factual

allegations as true, and determines whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* And the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. DISCUSSION

The Union levies two objections against Mercer's failure-of-representation claim. First, it argues that the claim—which Mercer seeks to bring under Title VII and its Ohio analogue—is "preempted" by Section 301 of the Labor Management Relations Act ("LMRA") and thus time-barred by the applicable statute of limitations. Second, it argues that even if the claim can escape Section 301's limitations period, Mercer fails to allege a plausible Title VII race discrimination claim against it. The court addresses each argument in turn.

#### A.     Preemption

Title VII makes it unlawful for unions "to discriminate against . . . any individual because of his race." 42 U.S.C. § 2000e–2(c)(1). Ohio law does the same. Ohio Rev. Code § 4112.02(C)(2). Nevertheless, the Union contends that Mercer's claim against it cannot be brought under these statutes. That is because, according to the Union, Mercer's claim "necessarily involve[s] interpretation of the Collective Bargaining Agreement ["CBA"]" between Howmet and the Union.

(ECF No. 13 at PageID #129.) And therefore, the Union asserts, Section 301 of the LMRA "preempts" Mercer's Title VII claim.

State law claims, to be sure, face Section 301 preemption when they "substantially implicate the meaning of collective bargaining agreement terms." *DeCoe v. GMC*, 32 F.3d 212, 216 (6th Cir. 1994). Accordingly, the Sixth Circuit has adopted "a two-step approach for determining whether section 301 preemption applies": "First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." *Id.* The Union urges the court to subject Mercer's Title VII claim to this test and hold it to be preempted.

But the Sixth Circuit's preemption test applies only to state law claims. And Mercer's Title VII claim, of course, arises under federal law. Indeed, "[t]he preemption doctrine . . . does not govern questions relating to the compatibility of two or more federal laws." *Watts v. UPS*, 701 F.3d 188, 191 (6th Cir. 2012) (quoting *Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir. 1999)). Thus, Section 301 cannot "preempt" Mercer's Title VII claim. *Gambrell v. GM, LLC*, 2022 U.S. Dist. LEXIS 15509, at *14 (E.D. Mich. Jan. 27, 2022) ("In [Title VII cases], the Sixth Circuit and district courts in this circuit routinely have held that section 301 preemption is inapplicable and does not preclude federal court litigation of discrimination and retaliation claims under Title VII or related federal and state statutes.").[1]

---

[1]    While one federal law cannot preempt another federal law, it is possible for a remedy under one federal law to *preclude* a remedy under another federal law. *See Torres v. Vitale*, 954 F.3d 866, 871–72 & n.1 (6th Cir. 2020). But preclusion involves an entirely different standard than preemption, *see id.*, and the Union does not develop an argument using that standard.

-4-

Still, as the Union points out, Mercer cannot avoid Section 301's statute of limitations simply by *labeling* his claim against the Union a Title VII claim. Rather, "the substance of his allegations determines whether his cause[] of action arise[s] under § 301 or a different provision of federal law." *Liggons v. GM, LLC*, 2021 U.S. Dist. LEXIS 61931, at *7 (N.D. Ohio Mar. 31, 2021). In *Liggons*, the court determined that the plaintiff's self-styled Title VII claims actually arose under Section 301 because the plaintiff had alleged a violation of his CBA rights, not his Title VII rights. *Id.* Here, however, Mercer's Complaint sends mixed signals. On the one hand, Mercer alleges that the Union "denied him fair and genuine representation in accordance with the terms of the [CBA]." (Compl. ¶ 63.) When described this way, Mercer's claim against the Union sounds like a quintessential Section 301 claim. *See* 29 U.S.C. § 185(a) (providing a cause of action for "violation of contracts between an employer and a labor organization"). On the other hand, though, Mercer alleges that the Union discriminated against him because of his race. (*Id.* ¶¶ 13, 30, 63–69.) This, undoubtedly, is the domain of Title VII—which, in contrast to Section 301, "does not require a showing that . . . the union violated any state statute or contract." *Peeples v. City of Detroit*, 891 F.3d 622, 636 (6th Cir. 2018) (internal quotation marks omitted).

Effectively, then, Mercer has packaged two claims—a Section 301 failure-of-representation claim, and a Title VII race discrimination claim—into one. The former (but not the latter) is governed by the six-month limitations period codified in 29 U.S.C. § 160(b). *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 172 (1983). Yet all of the allegations underlying Mercer's claim against the Union occurred more than a year before he brought suit. (Compl. ¶¶ 62–68.) Indeed, it is undisputed that Arbitrator Strongin denied Mercer's grievance on March 25, 2022, and that Mercer filed his Complaint on April 9, 2023. (ECF No. 13 at PageID #391–417; ECF No. 1.) Accordingly, the applicable six-month limitations period prevents Mercer from pursuing a

Section 301 claim against the Union. To the extent that he wishes to do so, the court grants the Union's Motion.

But, to the extent that Mercer presses a Title VII race discrimination claim against the Union, the Union is not entitled to dismissal—at least on statute of limitations grounds. *See Peeples*, 891 F.3d at 636; *Green v. AFT/Ill. Fed'n of Teachers Local 604*, 740 F.3d 1104, 1105–07 (7th Cir. 2014). The court therefore proceeds to the Union's next argument: that Mercer has failed to allege a plausible claim of race discrimination against it.

**B.      Plausibility**

The court rejects the Union's plausibility argument based on Mercer's failure to plead a prima facie case under the requirements of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). In *McDonnell Douglas*, the Supreme Court established an evidentiary standard that courts use to evaluate a plaintiff's Title VII claim when the plaintiff lacks direct evidence of discrimination. *Id.* at 800–06. Crucially, though, that standard does not "apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz*, 534 U.S. 506, 511 (2002). Here, the Union argues that Mercer alleges neither an "adverse action at the hands of the Union" nor that the Union "treated any similarly situated person differently than him in conducting an arbitration." (ECF No. 13 at PageID #134–36.)  This is the language of *McDonnell Douglas*, which, to reiterate, is not a required standard at the pleading stage. *See Swierkiewicz*, 534 U.S. at 511 ("[I]t is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case.").

-6-

The Union is, of course, free to raise a *McDonnell Douglas* argument at summary judgment. To survive a Rule 12(b)(6) motion, however, Mercer need only "allege sufficient factual content from which a court, informed by its judicial exper

ience and common sense, could draw the reasonable inference" that the Union discriminated against him because of his race. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). And although Mercer's Complaint on this score is thin, the court finds that it barely crosses this threshold. Specifically, Mercer alleges that the Union "routinely recommended to Black and Hispanic employees that they accept and agree to more harsh or severe discipline from [Howmet] than the discipline [it] would recommend that White employees accept and agree to for similar or worse conduct." (Compl. ¶ 30.) He further alleges that his Union representative "refused to present evidence favorable to [his] case that cast its White members in an unfavorable light." (*Id.* ¶ 67.) Based on these allegations, the court concludes that Mercer has stated a viable Title VII claim against the Union.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Defendants International UAW and UAW-Local 1050's Motion to Dismiss (ECF No. 13). The court grants it to the extent that Mercer relies on Section 301 of the LMRA as the source of his claim against the Union; the court denies it to the extent that Mercer relies on Title VII.

IT IS SO ORDERED.

*/S/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

July 11, 2024