**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT MERCER,** | ) | CASE NO. 1:23-CV-00728 |
| | ) | |
| *Plaintiff,* | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| *v.* | ) | |
| | ) | |
| **HOWMET AEROSPACE INC., et al.,** | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT HOWMENT AEROSPACE INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

---

i

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ............................................................................................... iii

BRIEF SUMMARY OF THE ARGUMENT ...................................................................... iii

STATEMENT OF THE ISSUES ......................................................................................... vi

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 1

    A.    Howmet Aerospace Inc. ................................................................................. 1

    B.    Howmet's Social Media Policy ..................................................................... 2

    C.    Plaintiff's Employment with Howmet .......................................................... 3

    D.    Plaintiff's Lawsuit ......................................................................................... 3

    E.    Plaintiff's YouTube Channel ........................................................................ 4

    F.    Investigation into YouTube Videos and Plaintiff's Termination from Employment ........................................................................................................... 6

    G.    Plaintiff's Various Methods of Redress ........................................................ 9

        1.    Plaintiff's Ohio Civil Rights Commission Charge ...................................... 9

        2.    Plaintiff's Grievance ................................................................................... 10

        3.    Plaintiff's Unemployment Compensation Claim ....................................... 11

LAW AND ARGUMENT ................................................................................................... 12

    A.    Plaintiff Cannot Establish a *Prima Facie* Case of Race Discrimination. ............. 12

    B.    Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation. ........................... 14

    C.    Howmet Had Legitimate, Non-Discriminatory and Non-Retaliatory Reasons for Its Business Decisions and Plaintiff Cannot Establish That the Reasons were Pretext. ................................................................................................................ 16

    D.    Plaintiff Cannot Prove his Claims Through Allegations About Other Employees' Experiences or a "Pattern and Practice" Theory. .............................................. 19

CONCLUSION ................................................................................................................... 20

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f) ............................................ 21

4864-1179-1575, v. 2

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Amesse v. Wright State Physicians, Inc.*, 2018-Ohio-416, 105 N.E.3d 612 (2d Dist.)................. 14

*Bacon v. Honda of Am. Mfg., Inc.*, 192 F.App'x 337 (6th Cir. 2006).......................................... 16

*Bell v. FirstEnergy Generation Corp.*, No. 1:09 CV 1880, 2011 U.S. Dist. LEXIS 97342 (N.D. Ohio Aug. 30, 2011) ................................................................................................................ 18

*Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304 (6th Cir. 1989)............................ 15

*Braithwaite v. Timken Co.*, 258 F.3d 488 (6th Cir. 2001) .......................................................... 17

*Browning v. Franklin Precision Indus., Inc.*, No. 23-5406, 2023 U.S. App. LEXIS 32410 (6th Cir. Dec. 5, 2023)...................................................................................................................... 14

*Burnette v. Wilkie*, No. 1:18-CV-1179, 2019 U.S. Dist. LEXIS 161272 (N.D. Ohio Sep. 17, 2019) ......................................................................................................................................... 17

*Caldwell v. Gasper*, Nos. 22-1031, 22-1032, 2022 U.S. App. LEXIS 30418 (6th Cir. Nov. 1, 2022) ......................................................................................................................................... 15

*Chen v. Dow Chem. Co.*, 580 F.3d 394 (6th Cir. 2009)............................................................... 17

*Coch v. GEM Indus.*, 6th Dist. Lucas No. L-04-1357, 2005-Ohio-3045...................................... 14

*Cooks v. Ford Motor Co.*, No. 3:21 CV 1368, 2023 U.S. Dist. LEXIS 95012 (N.D. Ohio May 31, 2023) ......................................................................................................................................... 14

*Cooper v. City of N. Olmsted*, 795 F.2d 1265 (6th Cir. 1986)..................................................... 16

*Hardesty v. Kroger Co.*, 758 F.App'x 490 (6th Cir. 2019) .......................................................... 18

*Jackson v. Genesee Cty. Rd. Comm.*, 999 F.3d 333 (6th Cir.2021)...................................... 15, 16

*Johnson v. Interstate Brands Corp.*, 351 F. App'x 36 (6th Cir. 2009)........................................ 20

*Johnson-Romaker v. Kroger Ltd. P'ship One*, 609 F. Supp. 2d 719 (N.D. Ohio 2009) .............. 13

*Kline v. TVA*, 128 F.3d 337 (6th Cir.1997).................................................................................. 12

*Leiper v. Sloter Concrete*, No. 2:05-cv-464, 2006 U.S. Dist. LEXIS 48730 (S.D. Ohio July 18, 2006) ......................................................................................................................................... 19

*Lockett v. Marsh USA, Inc.*, 354 F.App'x 984 (6th Cir. 2009) .................................................... 14

*McCraw v. Ohio Bell Tel. Co.*, No. 1:12 CV 1620, 2013 U.S. Dist. LEXIS 103570 (N.D. Ohio July 24, 2013)............................................................................................................................ 17

*Messer v. Ohio*, No. 1:11-cv-246-HJW, 2013 U.S. Dist. LEXIS 129718 (S.D. Ohio Sep. 11, 2013) ......................................................................................................................................... 13

*Nadel v. Time Warner Cable LLC*, No. 1:15-cv-447, 2016 U.S. Dist. LEXIS 133427 (S.D. Ohio Sep. 28, 2016) ........................................................................................................................... 15

*Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714 (6th Cir. 2008)................................................ 14

*Offutt v. Warren Cty. Reg'l Jail*, 109 F. App'x 740 (6th Cir. 2004)............................................ 15

*Owen v. GE Aviation*, No. 20-5177, 2021 U.S. App. LEXIS 24903 (6th Cir. Aug. 2, 2021)  12, 13

*Smith v. Chrysler Corp.*, 155 F.3d 799 (6th Cir. 1998) ............................................................... 12

*Smith v. Fed. Express Corp.*, 6th Cir. No. 19-5621, 2020 U.S. App. LEXIS 17416 (June 2, 2020) ............................................................................................................................................... 16

*Smith v. Ohio Dept. of Pub. Safety*, 2013-Ohio-4210, 997 N.E.2d 597........................................ 18

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742 (1993)........................................ 18

*Valentine v. Westshore Primary Care Assoc.*, 8th Dist. Cuyahoga No. 89999, 2008-Ohio-4450 15

*Veal v. Upreach LLC*, 10th Dist. Franklin No. 11AP-192, 2011-Ohio-5406 .............................. 12

*Wade v. City of Toledo*, No. 3:18 CV 1978, 2020 U.S. Dist. LEXIS 40086 (N.D. Ohio Mar. 9, 2020) .......................................................................................................................................... 19

*Weaver v. Ohio State Univ.*, 71 F. Supp. 2d 789 (S.D. Ohio 1998)............................................... 14

*Weijie Lu v. Univ. of Dayton*, No. 23-3105, 2023 U.S. App. LEXIS 31349 (6th Cir. Nov. 27, 2023) .......................................................................................................................................... 18

*Williams v. Dearborn Motors 1, LLC*, 6th Cir. No. 20-1351, 2021 U.S. App. LEXIS 26350 (Aug. 30, 2021) .................................................................................................................................... 20

## **Statutes**

R.C. Chapter 4112................................................................................................... 1, 12, 13, 14

Title VII ........................................................................................................... 1, 12, 13, 14, 15

## **Rules**

Ohio Civil Rule 41(A)(1)(a) ............................................................................................. 3

iv

## BRIEF SUMMARY OF THE ARGUMENT

The undisputed record evidence demonstrates that there is no genuine issue of material fact in dispute and that Defendant Howmet Aerospace Inc. ("Howmet") is entitled to judgment in its favor as to all of Plaintiff's claims against Howmet as a matter of law. With respect to Plaintiff's race discrimination and retaliation claims, the undisputed record evidence shows that Plaintiff cannot make a *prima facie* case of discrimination or retaliation as to Howmet because he cannot establish that any similarly situated non-protected employee was treated more favorably than he was treated. Even if Plaintiff could make a *prima facie* case, his claims still fail as to Howmet because Plaintiff cannot demonstrate that Howmet's legitimate reason for his termination was a pretext for unlawful conduct.

4864-1179-1575, v. 2

## <u>STATEMENT OF THE ISSUES</u>

1.  Whether Plaintiff can establish a *prima facie* case of race discrimination as to Howmet under Title VII or Ohio law.

2.  Whether Plaintiff can establish a *prima facie* case of retaliation Howmet under Title VII or Ohio law.

3.  Whether Plaintiff can establish that Howmet's stated reason for his termination was a pretext for race discrimination or retaliation.

## INTRODUCTION

Pending before the Court is the Complaint filed by Plaintiff Robert Mercer ("Plaintiff") relating to his former employment with Defendant Howmet Aerospace Inc. ("Howmet"). In his Complaint, Plaintiff purports to assert four claims against Howmet: (1) race discrimination under Title VII; (2) race discrimination under R.C. Chapter 4112; (3) retaliation under Title VII; and (4) retaliation under R.C. Chapter 4112. For the reasons set forth below, Howmet requests that the Court enter summary judgment in its favor on all of the claims in Plaintiff's Complaint.

## STATEMENT OF FACTS

### A.    Howmet Aerospace Inc.

Howmet is one of the world's leading producers of fabricated aluminum products, and it operates aluminum processing facilities around the world. (Affidavit of Tom Holbert ("Holbert Aff.") at ¶3)[1] At issue in the current lawsuit is Howmet's Cleveland Works facility, located in Cleveland, Ohio. (*Id.*) At this facility, Howmet manufactures aerospace components, oil and gas drilling products, and automotive castings.  (*Id.*)

The production employees at the Cleveland Works facility are members of a labor union, UAW Local 1050 (the "Union"). As a result, all of the terms and conditions of their employment are established by a Collective Bargaining Agreement between Howmet and the Union (the "Union Contract"). (*Id.* at ¶5)

In addition to the Union Contract, Howmet's Cleveland Works facility has at all relevant times maintained a Code of Conduct for bargaining unit personnel called the Cleveland Works Code of Conduct (the "Code of Conduct").  (*Id.* at ¶6) The disciplinary section of the Code of Conduct divides offenses into different categories – Minor Offenses, Major Offenses, and

---

[1] The Affidavit of Tom Holbert is attached hereto as Exhibit A.

1

Intolerable Offenses. (*Id.* at ¶7) Minor Offenses include violations that normally start off with a written warning and can lead to either suspension or discharge through the progressive discipline process.  (*Id.* at ¶8) Major Offenses are also progressive just like Minor Offenses, but include more serious violations that lead to either suspension or discharge and start off with a seven-day suspension. (*Id.*) Intolerable Offenses include the most serious violations, as the name indicates, and result in immediate termination. (*Id.*) The Code of Conduct also includes a Racial and Sexual Harassment policy, a violation of which is an Intolerable Offense. (*Id.* ¶9) All employees receive the Code of Conduct and expected to abide by it. (*Id.* at ¶6)

**B.     Howmet's Social Media Policy**

In addition to the Code of Conduct, Howmet has a Social Media Policy. (Holbert Aff. ¶10, at Ex. 1; Plaintiff's 2021 Deposition Transcript ("Pl. Tr. 2021")[2] at 74-76, Ex. 6) The Social Media Policy outlines the acceptable uses of social media and applies to all employees. (Holbert Aff. at ¶10, Ex. 1; Pl. Tr. 2021 at Ex. 6) For example, per the Social Media Policy, all posts made by employees related to the company must comply with the company's policies and procedures, including, for example, Howmet's Racial and Sexual Harassment Policy. (Holbert Aff. at ¶10, Ex. 1; Pl. Tr. 2021 at Ex. 6) Additionally, the Social Media Policy prohibits employees from posting "anything malicious, obscene, threatening or intimidating that disparages customers [or] employees . . . or that might constitute harassment or bullying." (Holbert Aff. at Ex. 1; Pl. Tr. 2021 at Ex. 6) Examples of prohibited conduct under the Social Media Policy are "offensive posts meant to intentionally harm someone's reputation or posts that could contribute to a hostile work

---

[2] Plaintiff was deposed in 2019 during discovery in his original Cuyahoga County Court of Common Pleas case, and again in 2021 in his re-filed Cuyahoga Court of Common Pleas case. Excerpts from Plaintiff's 2021 and 2019 deposition transcripts are attached hereto as Exhibits B and C, respectively.

2

environment[.]" (Holbert Aff. at Ex. 1; Pl. Tr. at Ex. 6) Violations of the Social Media Policy may result in termination from employment. (Holbert Aff. at Ex. 1; Pl. Tr. at Ex. 6)

## C.    Plaintiff's Employment with Howmet

Howmet[3] hired Plaintiff to work at the Cleveland Works facility in 2013 and subsequently employed him in several positions. (Robert Mercer's 2019 Deposition Transcript ("Pl. Tr. 2019") at 133-134, Ex. 5) Plaintiff was a member of the Union throughout his employment, and he received the Union Contract and the Code of Conduct. (Pl. Tr. 2019 at 148-149, Ex. 6, Ex. 7; Pl. Tr. 2021 at 73-74) Plaintiff expressly acknowledged in writing that he was aware of and responsible for adhering to the Code of Conduct. (Pl. Tr. 2019 at 150, Ex. 8)

Howmet provides several methods by which employees can report concerns to the company. (Pl. Tr. 2019 at 152, 154, 170-171; Holbert Aff. at ¶11) One such method is a 24-hour ethics and compliance hotline, which any employee or member of the general public may utilize to report a concern to Howmet, even anonymously, if he or she so chooses. (Pl. Tr. 2019 at 154-155; Holbert Aff. at ¶11) Despite testifying that he is aware of the various reporting methods at Howmet, including the hotline, Plaintiff never utilized any of them to make a single race-related complaint to Howmet.  (Pl. Tr. 2019 at 120-121, 152-155, 166, 170-171, 267; Holbert Aff. at ¶12)

## D.    Plaintiff's Lawsuit

In March 2018, Plaintiff filed a complaint against Howmet in the Cuyahoga County Court of Common Pleas alleging race discrimination in connection with a suspension that occurred in March 2017. (Case No. CV-18-895116). (*See* CV-18-895116 docket) On February 28, 2020, Plaintiff voluntarily dismissed the lawsuit pursuant to Ohio Civil Rule 41(A)(1)(a). (*Id.*) Plaintiff refiled the case in the Cuyahoga Court of Common Pleas approximately one month later, on March

---

[3] Plaintiff was hired by Alcoa, Inc. However, throughout Plaintiff's employment, the business entity has changed names from Alcoa, Inc. to Arconic Inc., and, as of April 2020, Howmet Aerospace Inc. (Holbert Aff. at ¶2)

31, 2020 (Case No. CV-20-931566). (*See* CV-20-931566 docket) The case proceeded to a jury trial in August 2023, which concluded in a unanimous jury verdict for Howmet. (*Id.*)

### E.     Plaintiff's YouTube Channel

For more than two years following the filing of his 2018 lawsuit, Plaintiff's employment with Howmet continued without incident. However, on July 15, 2020, Plaintiff began posting inappropriate, disturbing, and threatening videos on a YouTube channel titled "Black Lives Don't Matter at Alcoa/Arconic/Howmet (BLDM)." (Pl. Tr. 2021 at 76, 78, 135, 139-140; Deposition Transcript of Tom Holbert ("Holbert Tr.")[4] at 40-41) Over the next several weeks, Plaintiff continued to post additional inappropriate videos and other content on YouTube, as well on Twitter and Facebook.[5] (Pl. Tr. 2021 at 153, 155) The videos featured the photographs, printed names, and business addresses of current and former Howmet employees alongside dangerous and inflammatory racial imagery.[6] (Pl. Tr. 2021 at Ex. 8-12; Holbert Tr. at 40-41)

All of the videos contain inappropriate content, and a few of the most egregious excerpts from the videos are outlined below:

- Part 2 Video posted on July 15, 2020*:* The "Part 2" video also featured a photo collage with cartoons of an Adolph Hitler caricature - a white man wearing a red armband with the emblem of a swastika - alongside photos of Howmet leadership, thereby comparing company leadership to Hitler and the Nazis. (Part 2 Video; Pl. Tr. 2021 at 105-108, Ex. 8)

---

[4] Excerpts from Tom Holbert's deposition transcript are attached hereto as Exhibit D.

[5] As the Court is aware, in the years since his termination from employment, Plaintiff continues to post disturbing content on YouTube and Facebook regarding Howmet, current and former Howmet employees, and the undersigned counsel. YouTube.com, BLDM@ Alcoa Arconic And Howmet , at https://www.youtube.com/channel/UCbbpWD6cyP3SL6BgRuybISg (last accessed on July 26, 2024); Facebook.com, Rumpythemonkey.com Fight To Stop Systemic Racism At Howmet Aerospace!, at https://www.facebook.com/groups/474020390652229 (last accessed on July 26, 2024). (*See also* Pl. Tr. 2021 at 177-179, 185-186, Ex. 14, Ex. 15)

[6] The videos posted by Plaintiff during his employment are being filed herewith as Exhibits E-J.

- The same photo collage compared Howmet to the Ku Klux Klan. (Pl. Tr. 2021 at 110, Ex. 8) The collage was also used in Plaintiff's "Part 5" video posted on July 28, 2020, and the "Part 6" video posted on August 6, 2020. (Part 5 Video[7]; Part 6 Video[8])

- Part 2 Video posted on July 15, 2020: The video titled "Part 2" posted by Plaintiff featured the names and photos of Howmet employees and executives, such as Plaintiff's Union brothers, Human Resources employees, supervisors, and Union leadership. The employees' photos were posted alongside pictures of Derek Chauvin, Gregory McMichael, and Travis McMichael, who were charged with and convicted of high-profile racially motivated murders,[9] implying that Howmet's employees had engaged in similar crimes against people of color. (Part 2 Video[10]; Pl. Tr. 2021 at 112, 116-117, 122-124, Ex. 9)

- Part 5 Video Posted on July 28, 2020: The fifth video featured the name and photo of Pamela Whitton, Global Human Resource Director for the Structures Business Unit, followed by photos of slaves being hunted and beaten by white slave owners. (Pl. Tr. 2021 at 134-139, Ex. 11 at p. 4-7)

- The photos were accompanied with audio from a disturbing scene from the film Roots, during which a slave is brutally whipped. (Part 5 Video; Part 6 Video)

- Part 2 Video posted on July 15, 2020: The "Part 2" video featured photos of slaves in cotton fields with the words "In 2020 why do blacks feel they are treated like this!!!" The image

---

[7] Part 5 Video is being filed herewith as Exhibit I.

[8] Part 6 Video is being filed herewith as Exhibit J.

[9] Derek Chauvin was convicted on April 20, 2021 for the murder of George Floyd. (Aaron Cooper, "Derek Chauvin found guilty on all charges in the death of George Floyd", CNN.com, available at https://www.cnn.com/us/live-news/derek-chauvin-trial-04-20-21/index.html?tab=Verdict) On November 24, 2021, Gregory McMichael and Travis McMichael were convicted for the murder of Ahmaud Arbery. (Mike Hayes, "All 3 men found guilty of murdering Ahmaud Arbery face a possible life sentence," CNN.com, available at https://www.cnn.com/us/live-news/ahmaud-arbery-killing-trial-verdict-watch-11-24-21/index.html)

[10] Plaintiff has since edited the video currently available on YouTube to remove the photo collage with references to Derek Chauvin, Gregory McMichael, and Travis McMichael. (Pl. Tr. 2021 at 112-114, Ex. 8) However, Howmet preserved the original version of the video on July 21, 2020, which is being filed herewith as Exhibit F.

5

implied that Howmet treats its Black employees the same way that white plantation owners treated slaves. (Part 2 Video)

- <u>Video posted on July 15, 2020</u>: The description accompanying Plaintiff's first video listed Howmet's customers and discouraged customers from doing business with Howmet because, as Plaintiff accused, Howmet treated its employees "like this is some kind of plantation deep down south in the early 1900[s]." (Pl. Tr. 2021 at 85-90, Ex. 7; Holbert Tr. at 59-60; First Video[11])

In addition to the foregoing, Plaintiff made countless other harmful and false accusations against Howmet and its employees and managers, which Plaintiff has since admitted he cannot establish to be accurate. (Pl. Tr. 2021 at 121, 132, 139-142, 145-153, 195-198)

Plaintiff posted all of these videos during the summer of 2020, which was a time of heightened racial tension in this country. This made it even more dangerous for him to specifically target individual employees and managers and to provide their photographs and work addresses to anyone who may have been spurred to violence based on Plaintiff's unsupported and inflammatory allegations.

Although Plaintiff now admits that he created and posted the videos (*Id.* at 76), he originally posted the videos anonymously, using a device to disguise his voice. (*Id.* at 130, 134-135, 139; Holbert Tr. at 50) Therefore, when Plaintiff originally posted the videos, Howmet had to investigate to determine who was responsible for them.

**F.    Investigation into YouTube Videos and Plaintiff's Termination from Employment**

Almost immediately after Plaintiff posted the videos, employees began to report concerns. (Holbert Tr. at 44-45) For example, employees whom Plaintiff identified in the videos by name,

---

[11] The first video posted by Plaintiff on July 15, 2020 is being filed herewith as Exhibit E.

photo and address, and whom Plaintiff compared to Nazis and murderers came forward with concerns for their safety and for the safety of their children and other family members. (Holbert Tr. at 44-45, 53-55, 60-61; Deposition Transcript of Pam Whitton ("Whitton Tr.")[12] at 35, Ex. 1; Ross Seibert 2022 Transcript[13] ("Seibert Tr.") at 41)

Howmet launched an immediate investigation into the concerns that were raised. (Holbert Tr. at 44-45; Whitton Tr. at 31) Ms. Whitton and Jeff Allen, then Senior Director of Operations at Cleveland Works, led this investigation. (Holbert Tr. at 51; Whitton Tr. at 31-32)

Ms. Whitton and Mr. Allen began the investigation by gathering information and interviewing several employees. (Whitton Tr. at 17) These interviews identified Plaintiff as the individual suspected to have created and posted the videos. (Holbert Tr. at 49-50) For example, one employee reported hearing Plaintiff on the phone explaining an upcoming video before the video was posted to the public on YouTube. (Whitton Tr. at 17) Another employee reported Plaintiff saying that certain white employees were soon going to be movie stars, and later that day, those same employees were featured in one of the YouTube videos. (*Id.* at 18) Finally, a third employee reported that Plaintiff had many of the exact same pictures that were featured in the videos saved on his cell phone. (*Id.* at 19)

Ms. Whitton and Mr. Allen continued the investigation by interviewing Plaintiff on July 23, 2020. (Pl. Tr. 2021 at 155-158) During the interview, Ms. Whitton and Mr. Allen asked Plaintiff several questions regarding the videos, but Plaintiff falsely stated that he had never seen them. (*Id.* at 159-160; Whitton Tr. at 18-19) Plaintiff also behaved during the interview in a manner that demonstrated that he did not take it seriously. In this regard, Ms. Whitton noted that Plaintiff was "giggling" and "making a joke out of the videos." (Whitton Tr. at 19) Ms. Whitton and Mr.

---

[12] Excerpts from Pam Whitton's deposition transcript are attached hereto as Exhibit K.
[13] Excerpts from Ross Seibert's 2022 deposition transcript are attached hereto as Exhibit L.

Allen asked Plaintiff <u>directly</u> several times whether he created the YouTube videos. Plaintiff falsely stated each time that he did not. (Pl. Tr. 2021 at 157-160; Whitton Tr. at 35-36, Ex. 1) Following the interview, Plaintiff posted three additional videos on July 23, 2020, July 28, 2020, and August 6, 2020. The July 28, 2020 video specifically targeted Ms. Whitton and her investigation, as described above. (Part 5 Video)

Aside from the interviews, Howmet uncovered other information during the investigation clearly indicating that Plaintiff was responsible for creating and posting the videos. Such information therefore indicated that Plaintiff had lied during the investigation. For example, the investigation revealed prior YouTube videos by Plaintiff using similar style and content to attack disparage other people with whom he had disputes.  (Pl. Tr. 2021 at 106-107, Ex. 4, Ex. 8; Holbert Tr. at 49) These similarities were significant enough that they could not reasonably be characterized as a coincidence.

Howmet also hired a forensic expert to perform a voice analysis on the disguised voice used in the videos. (Holbert Tr. at 50; Holbert Aff. at ¶14, Ex. 2-3) The expert analyzed the voice in two separate videos and compared it to known recordings of Plaintiff from his prior videos. (Holbert Aff. at ¶ 14, Ex. 2-3) The forensic expert firm concluded that there was "a high level of confidence" that the voice on the 2020 YouTube videos inappropriately attacking Howmet and its employees and managers did, in fact, belong to Plaintiff. (Holbert Tr. at 50; Holbert Aff. at ¶ 14, Ex. 2-3)

Based upon the information learned during the investigation, Howmet determined that: (1) Plaintiff was responsible for posting the YouTube videos; and (2) Plaintiff had provided false information during an official investigation. (Holbert Tr. at 63) Howmet also concluded that by posting the videos, Plaintiff's purpose was, in part, to disparage customers, undermine

8

management, and incite violence against Howmet employees. (*Id.* at 59-63) Plaintiff's behavior violated several Howmet policies: the Social Media Policy; the Racial and Sexual Harassment Policy in the Code of Conduct; Intolerable Offense #5 - Engaging in deliberate acts that purposely undermine management (supervision); productivity or the organization; Intolerable Offense #9 – Threatening and harassing behavior; and Intolerable Offense #14 – Making untrue statements. (Holbert Tr. at 59; Whitton Tr. at 49) Each of Plaintiff's violations of Howmet policy was an independent basis for termination, especially considering that Plaintiff had previously been suspended for physically threatening a co-worker. (Pl. Tr. 2021 at 184, Ex. 10; Holbert Tr. at 64) Howmet therefore terminated Plaintiff's employment on August 6, 2020. (Pl. Tr. 2021 at 190-191, Ex. 16-17; Holbert Tr. at 59)

## G.    Plaintiff's Various Methods of Redress

### 1.    *Plaintiff's Ohio Civil Rights Commission Charge*

Plaintiff filed a charge with the Ohio Civil Rights Commission ("OCRC") after his termination, in which he purported to challenge Howmet's decision to terminate him as discriminatory and retaliatory. (Pl. Tr. 2021 at 230; Holbert Aff. at ¶ 16) The OCRC fully investigated Plaintiff's allegations, and after completing its investigation, dismissed Plaintiff's charge in its entirety, finding that Howmet did <u>not</u> discriminate or retaliate against him. As the OCRC explained in its dismissal notice:

> Specifically, the Commission found that Charging Party was not subjected to harassment or discharge due to race or disability or in retaliation for engaging in protected activity. Instead, Charging Party was discharged for his involvement with the posting of multiple videos on social media that were critical of Respondent, and which Respondent considered egregious, dangerous, and defamatory and in violation of its policies. Charging Party denied any involvement when questioned by Respondent, but ultimately acknowledged that he created and posted the videos.

(Holbert Aff. at ¶16, Ex. 4)

9

Plaintiff refused to accept the OCRC's complete rejection of his discrimination and retaliation claims, so he filed a formal request for reconsideration with the OCRC. The OCRC allowed Plaintiff to provide further support for his claims, after which the OCRC once again ruled in favor of Howmet. In particular, the OCRC affirmed the dismissal of Plaintiff's claims and ruled that "No Probable Cause exists to believe that [Howmet] engaged in an unlawful discriminatory practice." (*Id.* at ¶17, Ex. 5)

### 2.    *Plaintiff's Grievance*

In addition to his OCRC charge, Plaintiff challenged his termination by filing an official grievance through his union. (Pl. Tr. 2021 at 231) The grievance proceeded through all steps of the grievance process, eventually leading to a three-day in-person evidentiary arbitration hearing before a professional arbitrator during November 2021. (Pl. Tr. 2021 at 231; Holbert Aff. at ¶18) Plaintiff testified at length during the hearing, and Howmet and the union presented extensive evidence and arguments regarding the circumstances the led to Plaintiff's termination. After considering all of the arguments and evidence, the arbitrator issued a lengthy written ruling in Howmet's favor, upholding Howmet's decision to terminate Plaintiff and denying Plaintiff's grievance. (Holbert Aff. at ¶19, Ex. 6)

In the ruling, the arbitrator concluded that Plaintiff's videos clearly violated Howmet's policies, noting:

> The videos liken [Howmet's] executives and officials to some of the worst abusers in world history – that is no exaggeration – literally identifying them with Hitler and enslavers and murderers alleged (and now convicted) of racially motivated crimes.

(*Id.* at Ex. 6, p. 21) The arbitrator also concluded that Plaintiff had many more appropriate avenues to address his workplace concerns and that:

10

> [Howmet's] disciplinary response to grievant's videos [was not] unreasonable
> or disproportionate to grievant's severe violations of the Code of Conduct and
> the Harassment and Social Media policies.

(*Id.* at Ex. 6, p. 27) The arbitrator's ruling that Plaintiff committed "severe violations of the Code of Conduct" was supported by substantial evidence, and that ruling was not thereafter challenged.

### 3. *Plaintiff's Unemployment Compensation Claim*

In addition to the unsuccessful OCRC charge and the rejected union grievance, Plaintiff challenged his termination by way of a claim for unemployment compensation though the State of Ohio. Plaintiff's unemployment claim also went through extensive proceedings, including an evidentiary hearing. The evidentiary hearing on Plaintiff's unemployment claim involved testimony by numerous witnesses over the course of three days, including extensive testimony by Plaintiff. Following the hearing, the Unemployment Compensation Review Commission issued a written decision in Howmet's favor, finding that Howmet terminated Plaintiff's employment with just cause. (Holbert Aff. at ¶20, Ex. 7, p. 5) In reaching this decision the Unemployment Compensation Review Commission reasoned:

> [I]t was reasonable for Howmet Aerospace, Inc. to determine that the videos
> violated its Code of Conduct by interfering with the safety and wellbeing of
> employees identified in the videos, especially since numerous employees reported
> being concerned for themselves and their families. The videos alluded that the
> named employees were akin to individuals who were not just racist, but had
> committed murder. It is clear that the intention of the videos was to illicit a strong
> emotional response from viewers and to cause them to take action, possibly outside
> of calling for investigation.

(*Id.*)

Despite the clear evidence supporting Howmet's decisions to discipline and discharge Plaintiff, and despite the strongly-worded rulings against Plaintiff in all of the prior proceedings, he continued to challenge Howmet's decision through his claims in this Court. As will be demonstrated below, however, the Court should dismiss those claims.

11

## LAW AND ARGUMENT

When a plaintiff alleges discrimination or retaliation in violation of Title VII and/or R.C. Chapter 4112, he bears the initial burden of presenting either direct evidence of discrimination or retaliation, or establishing discriminatory or retaliatory intent indirectly through the *McDonnell Douglas* burden-shifting framework. *Owen v. GE Aviation*, No. 20-5177, 2021 U.S. App. LEXIS 24903, at *5 (6th Cir. Aug. 2, 2021); *Veal v. Upreach LLC*, 10th Dist. Franklin No. 11AP-192, 2011-Ohio-5406, ¶ 20. Because Plaintiff has neither alleged nor presented any direct evidence of discrimination or retaliation,[14] the *McDonnell Douglas* burden-shifting framework applies. Plaintiff must therefore start by establishing a *prima facie* case. If Plaintiff successfully establishes a *prima facie* case, Howmet must then articulate a legitimate, non-discriminatory and non-retaliatory reason for Plaintiff's termination. If Howmet does this, then Plaintiff must demonstrate that Howmet's stated reason for his termination is a pretext for unlawful discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

### A. Plaintiff Cannot Establish a *Prima Facie* Case of Race Discrimination.

In order to establish a *prima facie* case of disparate treatment race discrimination, Plaintiff must establish: (1) he is a racial minority; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) a comparable, non-protected person was treated more favorably. *Owen*, No. 20-5177, 2021 U.S. App. LEXIS 24903, at *7.

Plaintiff is unable to establish the fourth element of a *prima facie* case of disparate treatment race discrimination because he has no evidence of any similarly situated, white employees who posted the same type of false, threatening, and harassing videos on the internet or

---

[14] An example of direct proof would be evidence of an announcement by the decision-maker to the ex-employee, "I fired you because you are disabled [or are a member of some other legally protected minority classification]." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). It is a rare situation to find direct evidence and Plaintiff has alleged no such comments. *Kline v. TVA*, 128 F.3d 337, 348 (6th Cir.1997).

12

lied during an official workplace investigation and were not disciplined. *Messer v. Ohio*, No. 1:11-cv-246-HJW, 2013 U.S. Dist. LEXIS 129718, at *45-46 (S.D. Ohio Sep. 11, 2013) (considering the fact that Plaintiff did not provide the names, genders, or ages of any similarly situated individuals who were not disciplined for the conduct at issue). While Plaintiff has alleged generally that there is a pattern of "Caucasian people getting away with stuff," he has admitted *repeatedly* that he has absolutely no personal knowledge of any specific employee of a different race being treated more favorably than he was treated under similar circumstances. (Pl. Tr. 2019 at 32, 40, 261-262; Pl. Tr. 2021 at 191-194, Ex. 17) *Owen*, 2021 U.S. App. LEXIS 24903, at *6-7 (no *prima facie* case when plaintiff admitted in deposition that she could not identify any employee that was treated differently than her under the policy she violated). In this same regard, while Plaintiff alleges that he and some of his Black co-workers "feel" that certain events have occurred because of their race, he, *again*, has admitted that he has no personal knowledge of any other Black employee who has experienced or reported race discrimination at Howmet. (Pl. Tr. 2019 at 34, 36, 40-41, 45, 48-49, 58-59, 185-186; Pl. Tr. 2021 at 94-95, 179-185) Plaintiff's generalized accusations of racial hostility or incidents of which Plaintiff admittedly does not "know the actual facts" are insufficient to establish a *prima facie* case of race discrimination. (Pl. Tr. 2019 at 40) Given the foregoing, Plaintiff cannot establish that he was treated differently than any other similarly situated white employee and he therefore cannot establish a *prima facie* case of discrimination under either Title VII or R.C. 4112. *Johnson-Romaker v. Kroger Ltd. P'ship One*, 609 F. Supp. 2d 719, 730-721 (N.D. Ohio 2009) (no evidence of racial animus where plaintiff could not proffer examples of white employees who received less stringent discipline for the same behavior). Plaintiff's discrimination claims should therefore be dismissed.

13

**B.**     **Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation.**

Plaintiff also alleges in his Complaint that he was retaliated against in violation of Title VII and R.C. 4112 for engaging in protected activity. To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he engaged in protected activity; (2) Howmet knew of the protected activity; (3) Howmet subsequently took adverse employment action against Plaintiff; and (4) a causal connection between the protected activity and adverse employment action exists. *Browning v. Franklin Precision Indus., Inc.*, No. 23-5406, 2023 U.S. App. LEXIS 32410, at *8 (6th Cir. Dec. 5, 2023).

As an initial matter, to the extent that Plaintiff argues his YouTube videos are protected activity, this does not establish the first element of the *prima facie* retaliation case. Title VII and Ohio's anti-retaliation provision protects those who have (1) opposed an unlawful employment practice (the "opposition clause"); or (2) have made a charge, testified, assisted, or participated in any manner in any investigation involving discrimination (the "participation clause"). *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 719-20 (6th Cir. 2008). To sustain a claim under the opposition clause, a plaintiff must show that he took "an overt stand against suspected illegal discriminatory action." *Lockett v. Marsh USA, Inc.*, 354 F.App'x 984, 997 (6th Cir. 2009) (quoting *Coch v. GEM Indus.*, 6th Dist. Lucas No. L-04-1357, 2005-Ohio-3045, ¶ 32). The law does not protect "vague charges of discrimination." or "complaints concerning unfair treatment in general." *Id.; Weaver v. Ohio State Univ.*, 71 F. Supp. 2d 789, 793 (S.D. Ohio 1998). Furthermore, a plaintiff must have a "good faith belief that the challenged conduct is unlawful." *Amesse v. Wright State Physicians, Inc.*, 2018-Ohio-416, 105 N.E.3d 612, ¶ 39 (2d Dist.); *Cooks v. Ford Motor Co.*, No. 3:21 CV 1368, 2023 U.S. Dist. LEXIS 95012, at *22-23 (N.D. Ohio May 31, 2023). Here, Plaintiff could not in good faith believe that he was opposing unlawful conduct because Plaintiff has *admitted* he had *no factual basis* for the allegations he made in the videos. (Pl. Tr. at 2021 at 90-

14

105, 117-121, 125-128) *See Offutt v. Warren Cty. Reg'l Jail*, 109 F. App'x 740, 743 (6th Cir. 2004) (plaintiff did not have a reasonable belief that she was opposing unlawful racial discrimination because "[Plaintiff] appears to have manufactured her belief that the [employer]'s punishment violated Title VII for litigation purposes after the fact" and "[Plaintiff] produced no evidence that she reasonably believed she was opposing racial discrimination protected by Title VII"). Plaintiff's unsupported and false accusations in his videos are nothing more than vague charges of discrimination, and do not qualify as protected activity under Ohio or federal law. *Caldwell v. Gasper*, Nos. 22-1031, 22-1032, 2022 U.S. App. LEXIS 30418, at *19 (6th Cir. Nov. 1, 2022) (no *prima facie* case because plaintiff's vague and non-specific allegations were not sufficient to constitute protected activity); *Valentine v. Westshore Primary Care Assoc.*, 8th Dist. Cuyahoga No. 89999, 2008-Ohio-4450, ¶ 113.

Furthermore, the law is clear that an employee must "express [his] opposition in a *reasonable* manner." *Jackson v. Genesee Cty. Rd. Comm.*, 999 F.3d 333, 345 (6th Cir.2021) (emphasis added). Significantly, "[a]n employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989); *Nadel v. Time Warner Cable LLC*, No. 1:15-cv-447, 2016 U.S. Dist. LEXIS 133427, at *38 (S.D. Ohio Sep. 28, 2016) ("the manner of opposition must be reasonable").  Here, the record evidence shows that Plaintiff had several more appropriate avenues available to him to report any perceived workplace concerns. (Holbert Aff. at ¶11) Instead of using the various mechanisms Howmet provided to him, Plaintiff instead chose to post false, intimidating, and threatening content which violated several workplace policies, disrupted the work environment, and interfered with Howmet's legitimate business goals. *See Booker*, 879 F.2d 1304, at 1312;

*Jackson*, 999 F.3d 333, at 345. Plaintiff's outright and repeated lies regarding his responsibility for the videos during Howmet's investigation establishes that even he knew that his actions were unreasonable. Plaintiff's conduct was certainly not "reasonable" opposition conduct, and it does not establish the first element of his *prima facie* case.

Furthermore, to the extent that Plaintiff purports to claim that Howmet terminated him in retaliation for filing his lawsuit in 2018, his claim fails because he cannot establish a causal connection between the 2018 lawsuit and his termination more than two years later. Courts routinely hold that time periods far shorter than two years negate causality. *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (discharge four months after filing a discrimination claim is insufficient). Furthermore, Plaintiff testified that he cannot identify *any* adverse action taken against him by Howmet between his first lawsuit and his last day of employment in July 2020. (Pl. Tr. 2021 at 219) Accordingly, Plaintiff cannot establish a causal connection between any protected activity and his termination, and he therefore cannot establish a *prima facie* case of retaliation.

**C.    Howmet Had Legitimate, Non-Discriminatory and Non-Retaliatory Reasons for Its Business Decisions and Plaintiff Cannot Establish That the Reasons were Pretext.**

Even if Plaintiff could demonstrate all four elements of a *prima facie* discrimination or retaliation case (which he cannot), his claims still fail because Howmet has proffered a legitimate, non-discriminatory and non-retaliatory reason for his termination.  *See Bacon v. Honda of Am. Mfg., Inc.*, 192 F.App'x 337, 342 (6th Cir. 2006).  As explained above, Howmet terminated Plaintiff due to his serious violations of its policies by posting threatening and harassing videos and by lying repeatedly during an official workplace investigation. *Smith v. Fed. Express Corp.*, 6th Cir. No. 19-5621, 2020 U.S. App. LEXIS 17416, at *8 (June 2, 2020) (violation of anti-harassment policy is a legitimate, non-discriminatory business reason).

16

Because Howmet has presented a legitimate, non-discriminatory, and non-retaliatory reason for Plaintiff's termination, the burden returns to Plaintiff to identify evidence demonstrating that the stated reason constituted a pretext for impermissible discrimination or retaliation. *McCraw v. Ohio Bell Tel. Co.*, No. 1:12 CV 1620, 2013 U.S. Dist. LEXIS 103570, at *36-37 (N.D. Ohio July 24, 2013). Significantly, "[P]laintiff bears the burden of persuasion throughout the entire process." *Id.* at *37. To establish pretext, Plaintiff must show: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Regardless of which path Plaintiff selects, he must provide more than speculation in order to withstand summary judgment. *Burnette v. Wilkie*, No. 1:18-CV-1179, 2019 U.S. Dist. LEXIS 161272, at *33 (N.D. Ohio Sep. 17, 2019) ("unsupported speculation is not enough to create a triable issue on pretext."). As explained in detail above, the record evidence in this case clearly establishes that Howmet had an honest belief that Plaintiff had engaged in an outrageous pattern of improper behavior that violated the applicable work rules. The record evidence being filed herewith therefore unquestionably shows that Howmet's reasons: (1) had a basis in fact; (2) actually motivated Howmet's actions; and (3) were sufficient to warrant the actions taken. Plaintiff therefore cannot establish pretext.

Notably, Plaintiff cannot establish pretext with regard to his termination simply by claiming that the allegations against him were not true. It is well established that an employee "must allege more than a dispute over the facts upon which his discharge is based." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). Here, Howmet conducted a thorough investigation into Plaintiff's behavior and determined that the allegations were valid and corroborated by other witnesses. Howmet had no reason to doubt the witnesses' accounts of Plaintiff's behavior, and the

17

basis for Howmet's honest belief cannot credibly be challenged. *Hardesty v. Kroger Co.*, 758 F.App'x 490, 493 (6th Cir. 2019)  ("A belief is honestly held so long as the employer can establish its reasonable reliance on the particularized facts that were before it at the time the decision was made."); *Smith v. Ohio Dept. of Pub. Safety*, 2013-Ohio-4210, ¶ 78, 997 N.E.2d 597 ("[I]f an employer honestly believes in the legitimate, nondiscriminatory reason that it relied on in making its employment decision, then the employer lacks the necessary discriminatory intent."). Indeed, Plaintiff has admitted that he posted the videos and that he lied in Howmet's investigation. (Pl. Tr. 2021 at 76, 159-160) Although not specifically binding on this Court, the fact that the OCRC, the professional labor arbitrator and the State of Ohio all found that Howmet's decision to terminate Plaintiff was just and proper certainly indicates that Plaintiff cannot demonstrate that decision to have been pretextual.

To the extent Plaintiff argues that Howmet should have conducted its investigation differently or given him more lenient discipline (Pl. Tr. 2021 at 208), it is not the role of the Court to "act as a super personnel department that second guesses employers' business judgments." *Weijie Lu v. Univ. of Dayton*, No. 23-3105, 2023 U.S. App. LEXIS 31349, at *30 (6th Cir. Nov. 27, 2023) (citation omitted). Plaintiff is unable to show, as the law requires, *both* that Howmet's reasons were false, and that discrimination or retaliation was the real reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993).

Furthermore, Plaintiff cannot prevail by alleging that his behavior was "insufficient to warrant" his discipline. This requires Plaintiff to produce evidence of differential treatment received by employees not in the protected class even though they engaged in substantially identical conduct. *Bell v. FirstEnergy Generation Corp.*, No. 1:09 CV 1880, 2011 U.S. Dist. LEXIS 97342, at *23 (N.D. Ohio Aug. 30, 2011). As discussed above, Plaintiff cannot identify

18

*any* Howmet employees who engaged in the same threatening and intimidating behavior violating *multiple* workplace policies and/or provided false information during a workplace investigation with the Company's knowledge and were not disciplined. (Pl. Tr. 2021 at 191-194, Ex. 17) *Id.* at *27 (no pretext when plaintiff could identify no similarly situated employees who violated the same policy and were not disciplined).

Faced with the undisputed record evidence, Plaintiff can only speculate that his race and lawsuit were the actual reasons motivating his termination. (Pl. Tr. 2021 at 141) Plaintiff's unfounded assumptions are insufficient to support his claims. *See Wade v. City of Toledo*, No. 3:18 CV 1978, 2020 U.S. Dist. LEXIS 40086, at *20 (N.D. Ohio Mar. 9, 2020) (the plaintiff's own subjective belief that his termination was racially motivated is insufficient to create a genuine issue of material fact regarding pretext); *Leiper v. Sloter Concrete*, No. 2:05-cv-464, 2006 U.S. Dist. LEXIS 48730, *9 (S.D. Ohio July 18, 2006) (plaintiff failed to establish pretext where the only evidence she offered in her deposition were her conclusory statements that believed she was discriminated against).

Plaintiff has no record evidence indicating that unlawful discrimination or retaliation played any role in his termination. Accordingly, summary judgment is appropriate to Howmet on Plaintiff's claims.

**D.     Plaintiff Cannot Prove his Claims Through Allegations About Other Employees' Experiences or a "Pattern and Practice" Theory.**

Due to the parties' litigation history, Defendant expects that Plaintiff's Opposition brief will be based in large part upon: (1) allegations made by other individuals who are not parties in this case; (2) events that Plaintiff did not witness; and (3) events that allegedly happened *years* before or years after Plaintiff's termination from employment. Plaintiff's case, however, is not a "pattern and practice" case, and Plaintiff therefore cannot support his individual claim by pointing

19

to other employees' alleged experiences, including experiences remote in time from Plaintiff's termination or conduct Plaintiff did not witness or experience. *Williams v. Dearborn Motors 1, LLC*, 6th Cir. No. 20-1351, 2021 U.S. App. LEXIS 26350, at *15 (Aug. 30, 2021) (the pattern and practice framework "is inappropriate as a vehicle for proving discrimination in an individual case."); *see Johnson v. Interstate Brands Corp.*, 351 F. App'x 36, 41 (6th Cir. 2009) ("plaintiff's assertion that other employees might be able to establish a *prima facie* case of age discrimination in no way establishes that the defendant's reason for discharging plaintiff was pretext for age discrimination."). Accordingly, this type of evidence is not proper and cannot satisfy Plaintiff's burden at the summary judgment stage.

## **CONCLUSION**

As demonstrated by the foregoing, there is no dispute as to any material fact as to Plaintiff's claims against Howmet, and Howmet is entitled to judgment in its favor as a matter of law. Howmet therefore respectfully requests that the Court enter an Order dismissing Plaintiff's Complaint in its entirety as to Howmet and entering judgment in Howmet's favor.

Respectfully submitted,

/s/ *Brian J. Kelly*
Brian J. Kelly (0063679)
*bkelly@frantzward.com*
Megan Bennett (0095835)
*mbennett@frantzward.com*
**FRANTZ WARD LLP**
200 Public Square, Suite 3000
Cleveland, OH  44114
216-515-1660 (phone)
216-515-1650 (fax)

*Attorneys for Defendant*

4864-1179-1575, v. 2

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

This case has been assigned to a standard track. Defendant's Memorandum in Support of its Motion for Summary Judgment complies with the twenty (20) page limitation outlined in Local Rule 7.1(f).

*/s/ Brian J. Kelly* _____
Brian J. Kelly (0063679)

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was filed electronically on August 13, 2024.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Brian J. Kelly* _____
Brian J. Kelly (0063679)

4864-1179-1575, v. 2