# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT MERCER, | ) | |
| | ) | CASE NO. 1:23-cv-00728-SO |
| Plaintiff, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| vs. | ) | |
| | ) | |
| HOWMET AEROSPACE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM CONTRA DEFENDANT HOWMET AEROSPACE'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW Robert Mercer**, ("Plaintiff"), by and through counsel, and submits his Memorandum Contra **Defendant Howmet Aerospace Inc.'s Motion for Summary Judgment** ("Defendant Howmet's Motion"). **Plaintiff** submits that **Defendant Howmet's Motion** filed on August 13, 2024, fails to show that there are no genuine disputes as to any material facts and, therefore, as a matter of law, **Defendant Howmet** is not entitled to summary judgment. Basically, given the fact that genuine issues of material fact exist, summary judgment inappropriate. **Fed R. Civ. P. 56 (a).**

**Plaintiff** submits that there are genuine disputes as to the material facts stated below:

1. Whether Plaintiff was subjected to disparate treatment because of his race, **Black**, when he was terminated on August 6, 2020, for his alleged violation of **Defendant Howmet's** Code of Conduct.

2. Whether Plaintiff was subjected to disparate treatment because of his race, **Black**, when he was terminated on August 6, 2020, for his alleged violation of **Defendant Howmet's** social media Policy ("SMP").

3. Whether **Defendant Howmet's SMP** is void ab initio because it is contrary to and adversely impairs **Plaintiff's** right to engage in protected activity pursuant to **Title VII**, and **R.C. § 4112.01 et seq.**

4. Whether **Defendant Howmet's** application and/or interpretation of its purported **SMP** is a pretext for discrimination.

5. Whether or not Defendant Howmet actually disseminated and or actually instructed employees on their purported **SMP**.

**Defendant Howmet Aerospace Inc.** ("Defendant Howmet") through the conduct of its officials and/or employees violated **Title VII**, and **R.C. § 4112.01 et seq.** by imposing harsher discipline against **Plaintiff** solely because of his race, Black, and his previous engagement in protected activity against **Defendant Howmet. Plaintiff's Memorandum Contra** to **Defendant Howmet's** Motion establishing that there are genuine disputed issues of material fact is supported by Plaintiff's Affidavit, the Affidavits of current **Defendant Howmet** employees Maurice Flether and Alvis Ford and former **Defendant Howmet** employee Michael Dickson, which are attached as Exhibits 1, 2, 3, and 4, respectively.

## I. <u>SUMMARY JUDGMENT STANDARD</u>

It is well established that Summary Judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." **Fed R. Civ. P. 56 (a)**. All facts are to be construed in the light most favorable to the nonmoving party. *LaPointe v. United Autoworkers Local 600*, 8 Fed.3d 376, 378 (**6th Cir. 1993**) "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.' "*Smith v. Perkins Bd. Of Educ., 708 F.3d 821, 825* (6th Cir. 2013) (citing *Ford v. Gen. Motors Corp., 305 F.3d 545, 551*

*(6th Cir. 2002).* Since a court, when analyzing a motion for summary judgment must "view the evidence in the light most favorable to the party opposing the motion." it is clear, in the present case, that the Defendant has not and, indeed, cannot establish the absence of genuine issues of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.E.2d 538 (1986)* internal quotation omitted). Furthermore, since "all reasonable inferences must be made in favor of the non-moving party." -the reasonable inferences in this case strongly favor the **Plaintiff.** *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) quoting *Little Caesar Enters., Inc. v. OPPCO,* LLC, 219 F.3d 547, 551 (6th Cir. 2000). In summary, the Defendant as the moving party bears the burden of showing that no genuine issues of material fact exist which, in the present situation, is not the case. *Celotex Corp. v. Catrett,* 477 U.S. 317,324-325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Therefore, based on the reasons stated, herein, **Plaintiff** submits that **Defendant Howmet's Motion for Summary Judgment** filed on August 13, 2024, should be denied and overruled.

## II.   <u>STATEMENT OF THE CASE</u>

On or about **March 24, 2017, Defendant Howmet** employee **Brian Goans** ("Goans") falsely accused **Plaintiff** of threating him on the plant floor, in the vicinity of a 50,000,000-ton press ("Press").[1] **Goans** made the false allegations against **Plaintiff** because **Plaintiff** had complained to **Defendant Howmet Human Resources** employees that **Michael Korney,** a Caucasian, **Utility Operator** ("Korney") had not been disciplined for creating a life threating safety violation on the plant floor, on **Friday, March 17, 2024**   Based on **Defendant Howmet's** policy and practice of imposing harsher and disparate discipline against Black

---

[1] Goans is now deceased.

and Hispanic employees, **Plaintiff** was of the legitimate belief that had a **Black** Utility Operator, created a similar life threating safety violation he would have been subjected to serious discipline.

Instead of addressing the safety violation created by **Korney, Defendant Howmet** imposed a **30-day** suspension against **Plaintiff** based upon **Goans'** March 24, 2017, false allegations that **Plaintiff** had threatened him.   As a proximate result of **Defendant Howmet's** action in imposing a harsher discipline on **Plaintiff his** belief of disparity in the imposition of discipline was reinforced. This belief was reinforced when **Defendant Howmet** failed to discipline **Korney** for the life threating safety violation he created and ignored **Plaintiff's** complaints that **Black**  and **Hispanic** employees had consistently been subjected to disparate disciplinary treatment as opposed to their Caucasian counterparts.

Because **Defendant Howmet** ignored **Plaintiff's** repeated complaints that **Black** and **Hispanic** employees were being subjected to disparate treatment in the form of more severe discipline, on **July 15, 2020, Plaintiff** began posting a series of social media reports detailing the disparity that existed at **Defendant Howmet facil**ity. **Plaintiff's** action in posting and detailing the disparity that existed constituted a protected activity pursuant to **Title VII**, and **R.C. § 4112.01 et seq.  Plaintiff** acknowledges that he has posted and continues to post on the internet and various social media platforms content emphasizing, exposing and detailing the ongoing and pervasive patterns and practices of racial discrimination that exist at **Defendant Howmet's** facility which are perpetrated by **Defendant Howmet** against **Black** and **Hispanic** employees.

In spite of **Plaintiff's** social media activities being protected, **Defendant Howmet** contends that **Plaintiff's** employment was terminated on **August 6, 2020,** because he

violated its **Code of Conduct** and **Social Media Policy** ("SMP"). However, prior to his termination on **August 6, 2020, Defendant Howmet** had provided him no training on whatever **SMP was** in place at the time. [2]

In fact, the document **Defendant Howmet** purports to be a signature list of employees that attended training of the **SMP**, actually makes no reference to a **SMP** and the document is titled as "Flight and Safety/Ethics." (See Exhibit 5). Moreover, **Plaintiff** submits that it is significant that **Defendant Howmet** seeks to support its **Motion For Summary Judgment**, with the **Affidavit** of **Tom Holbert's** and **Exhibit 5**. **Plaintiff** contends that he has never seen the **SMP** before his deposition on **June 25, 2024**.

Interestingly, the **SMP** attached to **Defendant Howmet's Motion**, is from **Arconic**, but has no date. However, the **SMP** policy attached to **Defendants UAW's Motion for Summary Judgment** filed on September 15, 2024, is dated **March 2020**, and identified as **Exhibit U-7**, which proves it could not have been presented to **Plaintiff** or any other **Defendant Howmet employee**, October 17, 2019.   **The facts in this case clearly** demonstrate that Reasonable minds could not conclude such a course description would be about a social media policy. And, consequently, there is a genuine issue of material fact as to whether **Defendant Howmet** actions in justifying **Plaintiff's** termination based on a SMP was a pretext for racial discrimination. **Plaintiff** has unwaveringly testified to *never* having seen nor aware of a **SMP**. [3]

---

[2] See Exhibit 5.
[3] Arbitration, Volume III, November 30, 2021, page 465; Deposition Plaintiff, June 25, 2024, page 23.

Regardless as to whether or not there was or was a SMP, **Defendant Howmet's SMP** is void in its entirety and constitutes a direct violation of **Plaintiff's** rights to engage in protected activity under **Title VII**, and **R.C. § 4112.01 et seq.**

In summary, **Plaintiff** contends that the fact of the harsher discipline imposed on Black and Hispanic employees as opposed to their similarly situated Caucasian counterparts, constitutes a genuine issue of material fact that would render summary judgment inappropriate. Indeed, there is nothing in **Defendant Howmet's Motion for Summary Judgment** refutes the genuine issues of material that **Plaintiff's** discipline and termination was part and parcel of intentional discriminatory treatment by **Defendant Howmet**.

### III.   GENUINE ISSUES OF MATERIAL FACT

As previously indicated, there are genuine disputes as to the material facts of this case, including whether Plaintiff was subject to a harsher and more severe discipline, engaged in protected activity and was terminated and subject to retaliation based on his race

### A. THERE EXISTS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER PLAINTIFF'S TERMINATION CONSTITUTED DISPARATE TREATMENT BASED ON HIS RACE

As a threshold matter, **Defendant Howmet** makes reference to the well-established standard for establishing a prima facie case of racial discrimination articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 79 (1973). As set forth in *McDonnell Douglas,* a prima facie case of discrimination exists when the plaintiff establishes that he or she is:

> (1) Within a class of persons that Title VII seeks to protect.
>
> (2) Qualified for the position;
>
> (3) Terminated;
>
> (4) Replaced by a person outside the protected class

6

**Plaintiff** acknowledges the *McDonnell Douglas* analysis as the correct standard and statement of the law. Significantly, pursuant to *McDonnell Douglas* and its progeny, a prima facie case is established by any "evidence adequate to create an inference that an employment decision was based upon a discriminatory criterion, illegal under the act. *Teamsters v. United States* 431 U.S. 324, 358 (1977). The facts in this case establish that there was significant disparity between the discipline imposed on **Plaintiff**, as opposed to the discipline imposed on similarly situated White employees. The essence of a disparate treatment case is that "the employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin." *Talley v. Bravo Pitino Restaurant, Ltd,* 61 F.3d 1241 (6th Cir. 1995) (quoting *Shah v. General Electric Co.,* 816 F.2d 264 (6th Cir. 1987)

In the present situation, **Plaintiff** can establish that similarly situated White employees were treated more favorably and were not disciplined or terminated for transgressions of company rules. Indeed, in comparing the treatment received by Plaintiff to similarly situated white employees, it is clear that harsher discipline was imposed on Plaintiff than his white counterparts. Contrary to Plaintiff's contention in their **Motion for Summary Judgment,** there exists substantial evidence of more favorable treatment of similarly situated white employees which satisfies the fourth prong of the *McDonnell Douglas* test.

Plaintiff has produced the affidavits of persons that are familiar with the situation at Howmet, including the treatment of current and former employees. These affidavits document and detail the disparate treatment and discipline that was imposed on Black employees and the "more favorable" treatment afforded to their white counterparts.

1.  AFFIDAVIT OF MAURICE FLETCHER

The sworn affidavit of Maurice Fletcher describes the racist environment that existed at Howmet.  Mr. Fletcher, a military veteran, had been employed at Howmet since 1997 and, for over three years, served as a Forge Vice Chaiman. Mr. Fletcher's affidavit describes in detail the toxic and discriminatory environment at Howmet's facility. In Mr. Fletcher's role as Forge Vice Chairman he observed a number of situations in which Black workers were treated differently than their White counterparts. One such example of racial disparity identified in Mr. Fletcher's Affidavit consists of an incident in 2021 in which Mr. Fletcher was asked to review video footage that showed someone creating a mess by stuffing wads of toilet paper into the commodes.   However, Mark Mohn Chairman of the forge plant along with his brother, Local 1050 President, Don Mohn, provided him with hand-selected portions of the videos that had been previously screened and were inconclusive. In spite of the fact that the hand-picked videos were inconclusive, Howmet chose to discipline and terminate the employment of the lone Black suspect.  As stated, although the video footage was inconclusive, there was also a White suspect who was never investigated or disciplined. When Mr. Fletcher raised his concern about the disparity of treatment to the Mohn brothers, their replies to him were deceitful and indicative of a concerted effort to simply get rid of the Black employee.

Mr. Fletcher's Affidavit also addresses **Shontel Brown**, a Black employee who while on FLMA due to a medical condition was investigated and video recorded by private investigators. She was, eventually, terminated although the surveillance videos did not indicate that she was violating the terms of her approved FMLA.  The videos did show her being involved in innocent, day-to-day functions, performing routine tasks including driving

to the store to pick up food or medication.  In fact, following the detailed investigation there existed no legitimate basis for termination of her employment.  This type of treatment was not imposed on White employees and provides evidence and an inference that there was disparity in the manner in which Howmet addressed issues involving African American employees as opposed to their White counterparts.

In another instance, Mr. Fletcher's affidavit made reference to was the company's discriminatory actions involving African American, **Winston Zachery.  Winston Zachary** was terminated for being one minute late in reporting to work.  Although Mr. Zachery had prior incidents on his record, he was a good employee and proffered a legitimate reason for being one minute late.  He explained that his lateness was due to the fact that he had a special needs child and the regular babysitter had called-off sick due to COVID pandemic.  Under these circumstances he had to make other arrangements and locate another sitter on extremely short notice. None of this was considered by **Howmet** although **Holmet** was known to grant exceptions to White employees.  In the Zachery Winston case and in spite of the economic strain that he suffered in losing his job during the COVIC 19 pandemic he was summarily terminated.   Clearly, the manner in which **Howmet** handled **Mr. Zachary's** situation compared to the manner in which they handled similarly situated White employees who committed similar minor infractions, draws the inference that there was a double standard, one for Blacks employees and another for their white counterparts.

2.   TESTIMONY OF AUBREY GARDNER

Union Representative **Aubrey Gardner's** testimony during the arbitration hearing indicated that White employees routinely smoked on the job in the presence of their

supervisors.  However, **Brandon Moore**, a Black employee was terminated for allegedly violating the same rule violation, i.e. smoking on the job.  In another instance **Marcus Knowles**, a Black employee was suspended for 30 days for allegedly sleeping on the job although a number of White employees were filmed, sleeping on the job and were not subjected to discipline until the Plaintiff's video was released.  In fact, the YouTube videos that has become the subject of much of the controversy corroborates the fact that numerous White employees routinely slept on the job without any repercussions.    Under these circumstances **Mercer** actually did the company a service by exposing the actions of workers violating company rules and the Code of Conduct.  However, instead of addressing the situation or commending Mercer for his actions in exposing the situation, Howmet designated Mercer as a "problem" and embarked on a course to first suspend and then terminate him from employment.  Since this type of conduct did not occur with White employees prior to the release of the Youtube videos, the reasonable inference is that similarly situated White employees were afforded better treatment and Mercer's discipline and termination constituted discrimination.

### 3.   AFFIDAVIT OF ALVIS FORD

Alvis Ford in his sworn affidavit identified continuing and pervasive issues of racial disparity at Howmet.  Mr. Ford had been an employee of Howmet's predecessor companies and Howmet since 1998.  Mr. Ford was personally aware of the fact that following Mr. Mercer's termination, he was escorted from the building in the presence of other Howmet employees and forced to walk the "Walk of Shame."  In the instances in which White employees were terminated, they were simply given notice that their employment was

10

terminated and not to report to the Howmet facility.   Under the circumstances of an employee who supports his family and including during that economically strained unknown time period during COVID Mr. Fletcher has seen Howmet grant exceptions to the being late rule in the past to White employees. Yet, instead of granting an exception under these dire circumstances, Mr. Zachery's employment was terminated.

In addition to the blatant acts discrimination,  of favoritism existed in violation of the Human Resources polices.   For example, **Mark Mohn's** paramour, Karen Becker, a White employee, was moved from an employment position on the floor to an office job that HR failed to publicly post.  Minorities were excluded from applying for the job although job posting was, in theory a company policy.   Under these circumstances she was given preferential treatment.

### 4.    AFFIDAVIT OF ROBERT MERCER

Robert Mercer's affidavit explains the disparity in his treatment compared to his Caucasian co-workers.  He was repeatedly harassed and subjected to discipline.  Obviously, Howmet concluded that Mercer was a problem and through its supervisory personnel took action to terminate his employment.  Basically, Robert Mercer was afford treatment that was harsher than his Caucasian counterparts which creates an inference of disparate treatment and racial discrimination.

### IV. CONCLUSION

As was previously noteD a prima facie case is established by "evidence adequate to create an inference that an employment decision was based upon a discriminatory criterion,

illegal under the act.  *Teamsters v. United States*, Supra  In the case of racial discrimination, it is reasonable to infer that a person in a protected class who is treated less favorably than similarly situated persons not members of any protected class were victims of discrimination.

In the present situation, there is both direct and circumstantial evidence of racial discrimination.  The direct evidence involves the use of racial expletives directed towards racial minorities.  Use of racial jokes, the racial graffiti that was scrawled on the lavatory without any real investigation and/or repercussions on the part of **Howmet** strongly suggests that they were complicit in the discriminatory/toxic atmosphere that was fostered at Howmet.  Aside from the direct evidence that has been presented, there is a basis for inferences of racial discrimination.

The Plaintiff was a member of a protected class, his qualifications for the position were never questioned he was terminated under circumstances that strongly suggest that race was a motivating factor while persons outside the protected class maintained employment at Howmet.

Therefore, considering all of the evidence in the light most favorable to the Plaintiff as the non-moving party, the Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,

/s/ *Rachael J. Martin*

Rachael J. Martin (76085)
**R.J.M. Law LLC**
333 Babbit Road, Suite 233, Cleveland,  OH44123
T: (888) 580-8901/F: (888) 980.1066
E-mail: RJMLaw.us@gmail.com

12

*/s/ James L. Hardiman*
James L. Hardiman (0031043)
**Attorney at Law**
3615 Superior Avenue-Suite 3101-D
Cleveland, Ohio 44114
T: (216) 431-7811-Business
F: (216) 431-7644
E-mail: JamesHardiman11@gmail.com
E-mail: AttyJHard@aol.com
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

A copy of the foregoing Brief will be served on all counsel of record through the Court's electronic filing system.

Respectfully submitted,

*/s/ Rachael J. Martin*
Rachael J. Martin (76085)
**R.J.M. Law LLC**
333 Babbit Road, Suite 233
Cleveland, Ohio 44123
T: (888) 580-8901/F: (888) 980.1066
E-mail: RJMLaw.us@gmail.com

*/s/ James L. Hardiman*
James L. Hardiman (0031043)
**Attorney at Law**
3615 Superior Avenue-Suite 3101-D
Cleveland, Ohio 44114
T: (216) 431-7811
F: (216) 431-7644
E-mail: JamesHardiman11@gmail.com
E-mail: AttyJHard@aol.com
**Attorneys for Plaintiff**

13

# TABLE OF AUTHORITIES

**RULES**

Fed R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1,2**

**STATUTES**

Title VII OF 1964 CIVIL RIGHTS ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,6,7

R.C. § 4112.01 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,6,7

**TABLE OF CASES**

*Celotex Corp. v. Catrett,* 477 U.S. 317,324-325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). . . . . . 3

*LaPointe v. United Autowor*kers Local 600, 8 Fed.3d 376, 378 (6th Cir. 1993) . . . . . . . . . . . . . 2

*Ford v. Gen. Motors Corp.,* 305 F.3d 545, 551 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Little Caesar Enters., Inc. v. OPPCO, LLC,* 219 F.3d 547, 551 (6th Cir. 2000) . . . . . . . . . . . . . . . 3

*Moran v. Al Basit LLC,* 788 F.3d 201, 204 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574L.E.2d 538 (1986) . . . . . . . 3

*McDonnell Douglas Corp. v. Green,* 411 U.S. 79 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

*Shah v. General Electric Co.,* 816 F.2d 264 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Smith v. Perkins Bd. Of Educ.,* 708 F.3d 821, 825 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 2

*Talley v. Bravo Pitino Restaurant,* Ltd., 61 F.3d 1241 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . 7

*Teamsters v. United States* 431 U.S. 324, 358 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12