**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT MERCER, JR.,** | : | |
| | : | **Case No. 1:23-cv-00728** |
| **Plaintiff,** | : | |
| | : | **Judge Solomon Oliver, Jr.** |
| v. | : | |
| | : | |
| **HOWMET AEROSPACE, INC.,** | : | |
| et al., | : | |
| | : | |
| **Defendants.** | : | |

**UAW AND UAW LOCAL 1050'S REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

When presented with a properly supported Motion for Summary Judgment, "[t]he non-moving party must present 'significant probative evidence' to show that there is more than 'some metaphysical doubt as to the material facts.'" *McKenzie v. Advance Stores Co., Inc.*, 488 F.Supp.2d 658, 664 (S.D. Ohio 2007) (quoting *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993)). Even where a material fact is disputed, a court must still grant a motion for summary judgment unless the dispute is also genuine, meaning "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *McKenzie*, 488 F.Supp.2d at 663 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment." *Gooden v. City of Memphis Police Dept.*, 67 Fed. Appx. 893, 895 (6th Cir. 2003).

Plaintiff's Memorandum in Opposition to the Union Defendants' well-supported Motion for Summary Judgment ("Memorandum Contra") offers nothing but conclusory allegations,

speculation and unsubstantiated assertions. Plaintiff's proffered list of genuine issues of material fact does not even list questions of fact—it lists questions of law premised solely upon Plaintiff's baseless conclusory allegations. (DKT # 61, Page ID # 2366-67). Plaintiff also failed to respond to several of the arguments advanced by the Union Defendants in their Motion for Summary Judgment and therefore waived his opposition thereto.

The record in this matter conclusively demonstrates that there is not even any metaphysical doubt that the Union Defendants are entitled to judgment as a matter of law on Plaintiff's claim against them. No reasonable jury could return a verdict for Plaintiff against the Union Defendants on this record. Accordingly, the Court should grant the Union Defendants' Motion for Summary Judgment.

## II. ARGUMENT

In his affidavit, Plaintiff claims that the actions described therein constitute direct evidence of discrimination by the Union Defendants and Defendant Howmet Aerospace, Inc. ("Howmet"). (Affidavit of Robert Mercer, Jr. ("Mercer Aff."), DKT # 61-1, Page ID # 2388). Such a legal conclusion is inappropriate for an affidavit. Additionally, Plaintiff admitted that the *McDonnell Douglas* burden-shifting framework applies to this case. (Plaintiff's Memo. in Opp. to Howmet's MSJ, DKT # 60, Page ID # 2332). Plaintiff cannot establish the third or fourth elements of a prima facie case of race discrimination under *McDonnell Douglas* as a matter of law.

Plaintiff does not identify any **evidence** in his Memorandum Contra sufficient to establish the third element of a prima facie case, and he completely ignores the fourth element.[1] Plaintiff mentions the concept of pretext in passing in his Memorandum Contra, but does not offer any

---

[1] Plaintiff also repeatedly fails to cite to "particular parts of materials in the record" throughout his Memorandum Contra. The Court should disregard those portions of Plaintiff's Memorandum for failure to comply with Fed. R. Civ. P. 56(c).

substantive arguments to establish its presence in this case. The Union Defendants are entitled to judgment as a matter of law, and this Court should grant their Motion for Summary Judgment.

### A. Plaintiff cannot establish a prima facie case of race discrimination as a matter of law because the Union Defendants did not take any adverse action against him.

In general, Plaintiff's Memorandum Contra and the affidavits filed in support thereof are replete with (1) allegations about events that are simply not relevant to the instant lawsuit; and (2) conclusory allegations, speculation and opinion. Plaintiff does not offer any admissible evidence to create a genuine dispute of material fact or support his position that the Union Defendants are not entitled to judgment as a matter of law.

The Amended Complaint in this matter contains one remaining cause of action against the Union Defendants—that they failed to fulfill the duty of fair representation owed to Plaintiff in handling his discharge grievance on account of his race.[2] (Amended Complaint, DKT # 4, Page ID # 45-47). A substantial portion of the affidavits of Maurice Fletcher, Alvis Ford and Michael Dickson is devoted to alleged instances wherein employees of color other than Plaintiff were allegedly disciplined more severely than their white counterparts for similar misconduct. (DKT # 61-7-61-9, Page ID # 2403-2415). These allegations are wholly irrelevant to Plaintiff's claim against the Union Defendants in this matter. Some of the instances alleged occurred after Plaintiff's discharge, some of the allegations contain no date at all, and there is little to no discussion of the Union's conduct with regard to the discipline of these other individuals. There are no allegations concerning the Union's handling of grievances or arbitrations for other individuals, which is the only subject matter of Plaintiff's claim against the Union Defendants.

---

[2] As noted in the Union Defendants' Motion for Summary Judgment, the case law analyzing the duty of fair representation under the Labor Management Relations Act is instructive to analyzing the duty of fair representation under the Federal and Ohio Civil Rights statutes. *Peeples v. City of Detroit*, 891 F.3d 622, 636-38 (6th Cir. 2018).

The instant litigation does not concern every alleged instance of disparate treatment in issuing discipline that has ever occurred at Defendant Howmet's Cleveland facility.[3] Nor does it concern some general question of whether the Union Defendants have done enough to prevent disparate treatment of workers of color by Howmet. The sole question for the Court as to the Union Defendants is whether they discriminated against Plaintiff on the basis of his race in handling his discharge grievance. The undisputed material facts establish that the Union Defendants fairly and adequately represented Plaintiff at all times. This Court should grant the Union Defendants' Motion and dismiss Plaintiff's claim against the Union Defendants.

1. <u>The Union Defendants did not take an adverse action against Plaintiff with regard to their pre-arbitration decisions</u>.

In his Memorandum Contra, Plaintiff continues to claim that the Union Defendants took an adverse action against him by not replacing the arbitrator who heard his discharge grievance and by not replacing Patrick Spayde as his Union representative. There is simply no basis in fact for Plaintiff's position that the Union Defendants took an adverse action against him.

Plaintiff does not dispute that the Collective Bargaining Agreement provides for a neutral Umpire to hear grievances that reach arbitration. (Mercer Depo., Ex. U-11, DKT # 52-11, Page ID # 1450). Nor does Plaintiff dispute that Arbitrator Strongin had served in that role for years and had decided cases in favor of both the Company and the Union Defendants during that timeframe. (Spayde Decl., DKT # 55-1, Page ID # 2294; Mercer Depo., DKT # 52, Page ID # 1293-94). Instead, Plaintiff continues to claim, without identifying any evidence in support thereof, that Arbitrator Strongin was biased in favor of the Company. (Plaintiff's Memorandum Contra, DKT # 61, Page ID # 2377). Plaintiff's subjective opinion does not create a genuine issue of material

---

[3] Nor is it relevant whether Plaintiff's witnesses believe that he was justified in posting the videos that led to his discharge.

4

fact that could possibly establish that the Union took an adverse action against him by not attempting to remove the parties' selected neutral Umpire. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) (". . . subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law.").

Plaintiff also does not present any evidence to create a genuine dispute of material fact concerning Spayde's representation of him. In his affidavit, Plaintiff again references Spayde's handling of the grievance protesting his 2017 discipline. (Mercer Aff., DKT # 61-1, Page ID # 2382-87). But Plaintiff does not dispute the material facts concerning the Union's resolution of that grievance. Plaintiff admits that Spayde explained to him that the Union Defendants did not believe that they had enough evidence to successfully arbitrate the grievance **and** that he accepted Spayde's decision to withdraw the grievance. (Mercer Aff., DKT # 61-1, Page ID # 2383-84).

The rest of Plaintiff's complaints about Spayde are nothing more than speculation and should be disregarded by the Court. Plaintiff argues, without factual basis, that Spayde worked with Mark and Don Mohn, who are officials of UAW Local 1050, and conspired with Howmet to ensure that his discharge grievance did not succeed at arbitration. (Memorandum Contra, DKT # 61, Page ID # 2375). There is zero admissible evidence in the record to support such a finding. The Union Defendants, largely through the actions of Spayde, grieved Plaintiff's discharge, argued the grievance at every stage of the grievance procedure, advanced it to arbitration, thoroughly prepared for that arbitration, adjusted their strategy when needed,[4] and arbitrated the grievance over the course of a three (3) day hearing.

---

[4] Plaintiff admits that he initially claimed to Howmet that he was not involved in creating the videos. (Mercer Depo., DKT # 52, Page ID # 1213; Spayde Decl., DKT # 55-1, Page ID # 2292). Because the Union later learned from Howmet that Plaintiff had admitted to creating the videos, it had to change its theory of the case for arbitration. (Spayde Decl., DKT # 55-1, Page ID # 2293). Plaintiff has not always acknowledged posting the videos, as he states in his Memorandum Contra.

5

At the arbitration hearing, Spayde objected and cross-examined Company witnesses. (Plaintiff's Responses to RFAs, DKT # 55-3, Page ID # 2303-04). When Spayde could not continue for the third day of the hearing due to an unexpected need for medical leave,[5] he handed the case off to another capable representative in Steven Frammartino and provided him with all notes, exhibits and outlines needed to effectively present the Union's case. (Spayde Decl., DKT # 55-1, Page ID # 2295-96; Frammartino Decl., DKT # 55-4, Page ID # 2311-12). There is no basis in fact for Plaintiff's allegation that the Union Defendants took an adverse action against him by not replacing Spayde as his representative or through any of its other actions.[6] The Court should grant the Union Defendants' Motion for Summary Judgment.

    2. <u>The Union Defendants did not take any adverse action against Plaintiff concerning the arbitration of his discharge grievance</u>.

There is no indication in the record that the grievance and arbitration process did not function as intended with regard to Plaintiff's discharge grievance. As is the case in most arbitrations, one party prevailed while the other party did not. The twenty-seven (27) page Award issued by Arbitrator Strongin establishes that he thoroughly understood the Union's case. (Mercer Depo., Ex. U-27, DKT # 52-27, Page ID # 2108-2121). He simply concluded that, even in light of

---

(DKT # 61, Page ID # 2372). Further, his initial statements to Howmet denying involvement in the videos created a credibility issue at the arbitration. (*See, e.g.*, Mercer Depo., Ex. U-26, DKT # 52-26, Page ID # 2068).

[5] Plaintiff claims that the Union Defendants refused to replace Spayde when he "was experiencing serious medical treatment." (Memorandum Contra, DKT # 61, Page ID # 2366). Spayde was not experiencing "serious medical treatment" when preparing for or during the first two (2) days of the arbitration hearing. Instead, Spayde took medical leave prior to the third day of the arbitration hearing because he learned at that point in time that he would be receiving a liver transplant. (Spayde Decl., DKT # 55-1, Page ID # 2295).

[6] The Mohn brothers did recuse themselves from handling Plaintiff's discharge grievance because of accusations made against them in his videos. (Mercer Depo., DKT # 52, Page ID # 1225). Plaintiff also complained about that decision, which indicates that he would not have been satisfied even if Spayde had been removed from handling the grievance. (*Id*.).

6

the intent and purpose of the videos, the videos violated Company policy to such extent that Howmet had proper cause to discharge Plaintiff. (*Id.*).

Plaintiff complains about various aspects of how the Union Defendants handled and presented his discharge grievance at arbitration. In so doing, Plaintiff does not identify any **evidence** to establish that the Union Defendants took any adverse action against him. Plaintiff's subjective disagreement with the Union's strategy and his second-guessing of decisions made by the Union are not evidence and do not establish that it took any adverse action against him as a matter of law. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953) ("The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion."). Additionally, none of Plaintiff's complaints are supported by the undisputed material facts in the record.

Plaintiff first argues that the Union Defendants "ben[t] to pressure from the Arbitrator" by allowing the testimony of some of Plaintiff's witnesses to be cut short but allowing Howmet's witnesses to complete their testimony. (DKT # 61, Page ID # 2374). Because the arbitration concerned a disciplinary action, the Company presented its case first. As such, the Union Defendants had no way of knowing how Arbitrator Strongin would react to the presentation of their case as compared to the Company's. (*See generally* Mercer Depo., Exs. U-24-U-26, DKT # 52-24-52-26, Page ID # 1563-2094). In addition, Arbitrator Strongin requested that the Union tighten its presentation during the testimony of the last witness—Plaintiff—meaning that all other witnesses called by the Union Defendants were able to fully present their prepared testimony. (Mercer Depo., Ex. U-26, DKT # 52-26, Page ID # 2056-2062).

7

When he interrupted Plaintiff's testimony, Arbitrator Strongin explained that he understood the argument the Union Defendants were advancing and that the testimony was becoming cumulative. (*Id.*). He further stated that the arbitration was not the forum to litigate Plaintiff's entire career at Howmet, a statement to which Plaintiff agreed at that time. (Mercer Depo., Ex. U-26, DKT # 52-26, Page ID # 2058-59). It was therefore not an adverse action for the Union to modify the presentation of its case when requested.

Plaintiff also complains that the Union Defendants did not present various police reports, including a 2020 police report concerning the videos in question, and buried other exculpatory evidence during the arbitration of his discharge grievance. (Memorandum Contra, DKT # 61, Page ID # 2366, 2374-75, 2377). These complaints are not based on evidence in the record, and there is no genuine dispute of material fact in this case.

With regard to the 2020 police report, the undisputed material facts establish that the Union Defendants did not know the report existed at the time of the arbitration. (Spayde Decl., DKT # 55-1, Page ID # 2295). Plaintiff does not refute that fact and does not contend that the Union had a duty to find a document it did not know existed. (Mercer Depo., DKT # 52, Page ID # 1240).[7]

With regard to the other police reports that involved events unrelated to Mercer's discharge, unions are not required to present every piece of evidence identified by a grievant as a matter of law. *See Hayes v. UPS*, 327 Fed.Appx. 579, 586 (6th Cir. 2009). At any rate, Frammartino did not present the police reports because he did not believe they were highly relevant to the Union Defendants' case and because, by that point in the proceedings, Arbitrator Strongin had instructed the Union Defendants to "tighten up" the presentation of their case. (Frammartino

---

[7] The 2020 police report was not exculpatory evidence for the arbitration hearing as it has no relevancy to the question of whether the videos violated Howmet's Code of Conduct and Social Media Policy. (Memorandum Contra Ex. 6, DKT # 61-6, Page ID # 2402).

8

Decl., DKT # 55-4, Page ID # 2312). The police reports could have only bolstered the Union Defendants' position that Plaintiff created the videos in response to unaddressed racial issues at Howmet's facility, a position fully understood by the Arbitrator. The Union Defendants did not take any adverse action against Plaintiff by not introducing the police reports at the arbitration. Plaintiff has not identified any other allegedly withheld exculpatory evidence, and the Union Defendants are entitled to judgment as a matter of law.

Plaintiff contends that he should not have been disciplined under Howmet's Social Media Policy because he never saw the policy, was not trained on it, and did not know it existed. (Plaintiff Memo. in Opp. to Howmet's MSJ, DKT # 60, Page ID # 2329-2330; Memorandum Contra, DKT # 61, Page ID # 2373-74). To the extent that Plaintiff is claiming that the Union did not adequately make this argument at the arbitration hearing, he is mistaken. Plaintiff testified at the arbitration hearing that he had never seen the Social Media Policy and was entirely unfamiliar with it. (Mercer Depo., Ex. U-26, DKT # 52-26, Page ID # 2030). Further, Plaintiff was terminated for violating the Social Media Policy **and** several provisions of Howmet's Code of Conduct. (Mercer Depo., Ex. U-6, DKT # 52-6, Page ID # 1402).

Plaintiff provides the affidavit of Maurice Fletcher, the former Forge Vice Chair of UAW Local 1050, who handled Plaintiff's discharge grievance through the first steps of the grievance procedure, as support for his position that the Union Defendants took adverse action against Plaintiff via Spayde's actions at the arbitration hearing.[8] Fletcher claims that Spayde failed to appropriately object and cross-examine certain witnesses and that Spayde should have used the police reports. (Affidavit of Maurice Fletcher, DKT # 61-7, Page ID # 2406). Fletcher's subjective

---

[8] The fact that Fletcher handled Plaintiff's discharge grievance for UAW Local 1050 supports an inference that Plaintiff was satisfied with the Local Union's actions.

9

opinions regarding the quality of Spayde's advocacy are not evidence and cannot create a genuine dispute of material fact. *See Mitchell*, 964 F.2d at 585; *Gooden*, 67 Fed.Appx. at 895.

Fletcher's opinions lack foundation because there is no indication that he has any experience in arbitrating grievances. Further, even if Fletcher may have asked different questions or objected to the Company's case differently, that cannot establish that the Union Defendants, through Spayde, took an adverse action against Plaintiff as a matter of law. "When reviewing a union representative's actions or omissions, we must never lose sight of the fact that union agents are not lawyers, and as a general proposition, cannot be held to the same standard as that of licensed professionals." *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 539 (6th Cir. 2003); *see also Huffman*, 345 U.S. at 338. There is no evidence in the record that could possibly establish that the Union Defendants did not honestly and fairly represent Plaintiff to the best of their abilities.

Plaintiff cites *Johnson v. International Longshoremen's Association Local 815 AFL-CIO*, 520 Fed.Appx. 452 (7th Cir. 2013), in support of his position that the Union did nothing or chose "ineffectual steps" to address Howmet's alleged discriminatory conduct. (Memorandum Contra, DKT # 61, Page ID # 2370). *Johnson* supports the Union, not Plaintiff, and the court therein specifically noted that a union is not responsible for an employer's actions under Title VII.[9] Like the union in *Johnson*, the Union Defendants did investigate the alleged discrimination occurring at Howmet's Cleveland facility. The Union's entire argument presented at arbitration was that Plaintiff's actions in posting the videos were justified **because** of racial issues at the facility that were unaddressed by Howmet. The Union presented six (6) witnesses who testified to problems at

---

[9] Neither *Johnson* nor any of the cases cited therein stand for the proposition that strategic decisions made during an arbitration hearing can ever lead to Title VII liability. 520 Fed.Appx. at 454; *Maalik v. Int'l Union of Elevator Constructors, Local 2*, 437 F.3d 650 (7th Cir. 2006); *Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989 (7th Cir. 2002); *Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071 (8th Cir. 2005).

the facility. The conduct of the Union Defendants in this case is the exact opposite of the problematic behavior contemplated by the court in *Johnson*.[10]

The Union Defendants did not take any adverse action against Plaintiff when handling his discharge grievance. The Court should grant the Union's Motion for Summary Judgment because the Union Defendants are entitled to judgment as a matter of law.

**B. Plaintiff waived his opposition to the Union Defendants' arguments that he failed to establish the fourth element of his prima facie case of discrimination.**

To establish a prima facie case of discrimination under the *McDonnell Douglas* analysis, a plaintiff must identify similarly situated individuals who were not subject to the same alleged adverse actions as the plaintiff. Here, Plaintiff does not identify any individuals who were allowed to determine the presentation of their grievances at arbitration, including what exhibits were offered and which arbitrator or Union advocate were selected. Plaintiff does not identify any person whom he believes was treated better by the Union Defendants in the course of their representation. Because Plaintiff failed to address Union Defendants' arguments with regard to the fourth element of his prima facie case of discrimination, he has waived opposition to that argument. *See, e.g.*, *Humphrey v. U.S. Attorney General's Office*, 279 Fed.Appx. 328, 331 (6th Cir. 2008); *Johnson v. Apple, Inc.*, Case No. 3:13-cv-204, 2014 WL 4076148, at *1 (S.D. Ohio Aug. 14, 2014). Plaintiff cannot establish a prima facie case of race discrimination for this additional reason as well.

**C. Plaintiff cannot establish that the Union Defendants' legitimate, non-discriminatory reasons for their actions were pretext for race discrimination.**

Plaintiff also failed to respond to many of the Union Defendants' arguments concerning pretext. Plaintiff's only attempt at establishing pretext is to argue that the Union Defendants'

---

[10] Contrary to Plaintiff's contention, a union's duty to represent its members does not require that it litigate civil lawsuits for them. (Memorandum Contra, DKT # 61, Page ID # 2367-68).

11

actions had no basis in fact because they engaged in a conspiracy against him. (Memorandum Contra, DKT # 61, Page ID # 2375). As noted, there is zero admissible evidence in the record to establish that there was a conspiracy between the Union and Howmet concerning Plaintiff's discharge grievance. Plaintiff's claim that the Union engaged in a conspiracy against him is based on nothing more than opinions and conclusory allegations, which are not evidence. *Mitchell*, 964 F.2d at 585; *Gooden*, 67 Fed.Appx. at 895. Plaintiff does not address the other arguments advanced by the Union Defendants concerning pretext, and he therefore waives his opposition thereto. *See Humphrey*, 279 Fed.Appx. at 331; *Johnson v. Apple, Inc.*, 2014 WL 4076148, at *1. Thus, even if Plaintiff could establish a prima facie case of race discrimination, which he cannot, he cannot show pretext as a matter of law. Accordingly, the Court should grant Union Defendants' Motion for Summary Judgment.

## IV. CONCLUSION

There is no admissible evidence in the record that could create a genuine issue of material fact necessary to dispose of Plaintiff's claim against the Union Defendants. The Union Defendants are entitled to judgment as a matter of law and no reasonable jury could determine otherwise. For all of the reasons set forth herein and in the Union Defendants' Motion for Summary Judgment, the Union Defendants respectfully request that this Court grant their Motion for Summary Judgment and dismiss the claim against them in its entirety.

Respectfully submitted,

**JOYCE GOLDSTEIN & ASSOCIATES**

**Of Counsel:**

*/s/ Kristin Seifert Watson*
Kristin Seifert Watson (0078032)
Lane C. Hagar (0101110)
Cloppert, Latanick, Sauter & Washburn

        225 East Broad Street, 4th Floor
        Columbus, Ohio 43215-3709
        Telephone:    (614) 461-4455
        Facsimile:     (614) 621-6293
        Email:          kwatson@cloppertlaw.com
                        lhagar@cloppertlaw.com

        Joyce Goldstein (0029467)
        Joyce Goldstein & Associates
        3080 Laurel Road
        Cleveland, Ohio 44120
        Telephone:    (216) 771-6633
        Facsimile:     (216) 509-2542
        Email:          jgoldstein@ggcounsel.com

*Counsel for Defendants UAW and UAW Local 1050*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically on October 9, 2024, using the Court's CM/ECF system. All parties may access this filing utilizing the Court's ECF system.

        Respectfully submitted,

        */s/ Kristin Seifert Watson*
        Kristin Seifert Watson (0078032)